## THE STRATHAIRLY

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Argued February 1, 1888. — Decided February 13, 1888.

The fine imposed upon the master of a vessel, by Rev. Stat. § 4253, for a violation of that and the preceding section, is, by § 4270, made a lien upon the vessel itself, which may be recovered by a proceeding *in rem;* but it is the same penalty which is to be adjudged against the master himself, in the criminal prosecution for misdemeanor, and payment by either is satisfaction of the whole liability.

Section 4264 of the Revised Statutes, as amended by the act of February 27, 1877, 19 Stat. 240, 250, subjects vessels propelled in whole or in part by steam, and navigating from and to, and between the ports therein named, to the provisions, requisitions, penalties and liens included within Rev. Stat. § 4255, as one of the several sections of the chapter relating to the space in vessels appropriated to the use of passengers.

A penalty imposed upon a master of a vessel arriving at a port of the United States, for a violation of the provisions of Rev. Stat. § 4266, is not charged as a lien upon the vessel by the operation of Rev. Stat. § 4264, as amended by the act of February 27, 1877, 19 Stat. 240, 250.

THE case, as stated by the court, was as follows:

This was a libel of information *in rem*, filed in the District Court of the United States for the District of California, July

1, 1882, on behalf of the United States against the British steamer Strathairly. The claimant having interposed peremptory exceptions, a decree in the District Court was entered August 30, 1882, sustaining the exceptions and dismissing the libel. From this decree the libellant appealed to the Circuit Court of the United States for the District of California, in which, October 3, 1882, a decree was entered sustaining the exceptions and dismissing the libel. From that decree the libellant appealed.

The libel contained three counts. The first was for the recovery of $16,300 for an alleged violation of the provisions of §§ 4252 and 4253 of the Revised Statutes. In this count it was alleged that the steamship Strathairly was a British vessel owned by citizens of Great Britain, and propelled in whole or in part by steam; that W. B. Fenwick, the master thereof, brought on said steamer from Hong Kong, China, 326 steerage passengers in excess of the number fixed by law in proportion to the space or tonnage of said vessel; that by reason thereof, Fenwick, the master of said ship, became liable to a fine of $50 for each of said 326 passengers, amounting to $16,300, which amount, it was alleged, was made a lien by the laws of the United States on said vessel, her tackle, furniture, engines, and apparel. It was further alleged in the same count that prior to the promoting of said libel a criminal information was filed in the District Court of the United States for the District of California, charging Fenwick, the master, with the offence of unlawfully bringing from said port of Hong Kong into the port of San Francisco the said 326 passengers in excess of the number that he could lawfully bring on said vessel; that said Fenwick was duly arraigned on said information, and pleaded guilty to the offence of bringing on said vessel 223 steerage passengers in excess of the number that he could lawfully bring on the same; that thereupon said Fenwick was duly sentenced to pay a fine of $50 for each of said 223 passengers, amounting in all to the sum of $11,150. To this count McIntyre, the claimant of the ship, filed a peremptory exception on the ground that the facts stated were not sufficient to constitute, create, or give rise to a lien on said vessel under any law or statute of the United States.

The second count of the libel was for the recovery of the sum of $5280 for an alleged violation of the provisions of § 4255 of the Revised Statutes. In this count it was alleged that on April 17, 1882, at Hong Kong, China, there were taken on board of said steamship Strathairly 1056 steerage passengers for transportation to the port of San Francisco, Cal.; that said 1056 steerage passengers were by said vessel transported to and landed at said port of San Francisco; that said vessel at the time said steerage passengers were so transported from Hong Kong to San Francisco did not have the number of berths required by law for the accommodation of said passengers, nor were said berths constructed in the manner required by law, by reason whereof the master of said ship and the owners thereof became liable to a penalty of $5 for each of said 1056 passengers, amounting in all to $5280, no part of which had been paid, and that the same constituted a lien upon said vessel. To this count the claimant also excepted, 1st, because the facts stated therein were not sufficient to constitute, create, or give rise to a lien on said vessel under any law or statute of the United States; 2d, because the ship Strathairly, being at the time a vessel propelled in whole or in part by steam, neither the master nor owners thereof were subject or liable to the penalty provided for by § 4255 of the Revised Statutes, and that no lien did or could attach on said vessel under § 4270 of the Revised Statutes.

The third count of the libel was for the recovery of the sum of $1000 for the alleged violation of the provisions of § 4266 of the Revised Statutes, taken in connection with § 2774. In this count it was alleged that W. B. Fenwick, the master of said steamship, on April 17, 1882, took on board of said ship at Hong Kong, China, 1056 steerage passengers, and transported them in said ship to the port of San Francisco; that on arriving at said last named port the said master neglected and refused to deliver to the collector of customs at said port of San. Francisco, a list of all the passengers taken on board of said vessel and brought in her to the port of San Francisco; also that said Fenwick knowingly and wilfully made out and delivered to said collector of customs a false list

of said passengers, in which he reported that the whole number brought was 829, and no more, instead of 1056, the number alleged to have been actually brought and landed, by reason of which said Fenwick became liable to a fine of $1000, which, it was alleged, was also a lien upon said vessel. To this count the claimant excepted, on the ground that the facts stated were not sufficient to constitute, create, or give rise to a lien on said vessel under any law or statute of the United States.

*Mr. Assistant Attorney General Maury* for appellant.

*Mr. William W. Morrow* for appellee. *Mr. Milton Andros* signed and filed the brief for same.

I. Under the first cause of action, the libellant seeks to recover, by a proceeding *in rem* against the steamship Strathairly, not only the *fine* which the master of that vessel was, by a decree of the District Court of the United States for the District of California, condemned to pay on a proceeding against him by criminal information for a violation of the provisions of §§ 4252 and 4253 of the Revised Statutes of the United States, but also $5150 in *excess* thereof. [These sections are to be found in the opinion of the court, *post.*] It will be observed that the punishment, denounced by § 4253 for the carriage of passengers in excess of the number allowed by § 4252, is confined to the master of the vessel, who, in such case, is to be deemed guilty of a misdemeanor, and shall be fined $50 for each passenger taken on board in excess of the number allowed by law, and may also be imprisoned for a period not exceeding six months; that is, he may be both fined and imprisoned at the discretion of the court, within the limits provided in § 4253. No mention whatever is made of any liability on the part of the owner of the vessel or of the vessel itself for a violation of the provisions of either of the foregoing sections.

Now §§ 4252, 4253 and 4254 are, in all matters of substance, identical with § 1 of the act of March 3, 1855, 10 Stat. 715, c. 213.

The only other section of the Revised Statutes relating to the bringing of passengers into the United States from a foreign port or place in which the punishment for a violation of its provisions is directed solely against the master of the vessel, is § 4262. This section provides that it shall be the duty of the masters of vessels employed in transporting passengers between the United States and Europe, to cause their food to be properly cooked, and to be served at regular and stated hours in such manner as shall be deemed most conducive to their health and comfort; and that "every master of any such vessel who wilfully fails to furnish and distribute the food in the quantity, and cooked in the manner required by this Title, shall be deemed guilty of a misdemeanor, and shall be fined not more than one thousand dollars, and be imprisoned for a term not exceeding one year. The enforcement of this *penalty*, however, shall not affect the civil responsibility of the master and owners to such passengers as may have suffered from such default." This section, together with the two sections next preceding, is the same as § 6 of the act of March 3, 1855.

It is to be observed that the word *penalty*, as used in § 4262, is not synonymous with *fine*. This *penalty*, the enforcement of which is not to affect the civil responsibilities of the master and owners, as provided in the last clause of the section, is the *fine* and *imprisonment;* it is, therefore, not the *fine* only that is designated as the *penalty*, but the *whole punishment* that is so designated.

Section 4270, which prescribes the mode of procedure for the recovery of the several *penalties* hereafter to be mentioned, is [set forth in the opinion of the court, and is] identical in all respects with the provisions of § 15 of the act of March 3, 1855, except that in the latter section the phrase "vessel or vessels" is used. Now, what are the "several *penalties* imposed by the foregoing provisions" which are to "be *liens* on the vessel violating those provisions"? This leads to an examination of "the foregoing provisions," for a violation of which a penalty *eo nomine* is denounced against the master and owners, recoverable by a proceeding *in rem* against the vessel, and to a comparison of them with the provisions of the act of March 3, 1855.

Section 4255 directs in what manner the berths on board vessels bringing passengers from a foreign port shall be constructed; and provides, that for a violation of this section, "the master of the vessel and the owners thereof shall severally be liable to a *penalty* of five dollars for each passenger on board of such vessel on such voyage to be recovered by the United States in any port where such vessel may arrive or depart." This section is identical with § 2 of the act of March 3, 1855.

Section 4256 requires a *house* on the upper deck over the passage way leading to the apartment allotted to passengers below deck, and provides how such house shall be constructed. This is identical with § 3 of the act of March 3, 1855.

Section 4257 provides for the *ventilation* of the apartments occupied by the passengers, and determines the size and construction of such ventilators. This section is identical with § 4 of the act of March 3, 1855.

Section 4258 provides for the number, construction and arrangement of the *cambooses* or *cooking ranges*. This section is the same as § 5 of the act of March 3, 1855.

Section 4259 [set forth in the opinion of the court] is identical with the provisions of § 8 of the act of March 3, 1855, except that the penalty therein prescribed is $50 instead of $200, as in § 4259.

Section 4263 provides that the master of such passenger vessel is authorized to maintain good discipline, and such habits of cleanliness among passengers as will tend to the preservation and promotion of health; that their apartments shall be kept in a clean and healthy state, and makes other provisions of a similar character. It is then further provided in said section, that for each neglect or violation of any of the provisions thereof, the master and owner of the vessel shall be severally liable to the United States in a *penalty* of $50, to be recovered in any circuit or district court within the jurisdiction of which such vessel may arrive, &c.

The provisions of this section, so far as they relate to what is to be done by the master or owners of the vessel in respect to the discipline, cleanliness, &c., of the passengers, are identi-

cal with the provisions of § 7 of the act of March 3, 1855. And so far as they relate to the *penalty* and the *method of its recovery*, are identical with the provisions of § 8 of the act of March 3, 1855, for a violation of the seventh section of said act.

The result of the foregoing examination shows that by the provisions of title 48, c. 6, of the Revised Statutes relating to the "transportation of passengers and merchandise," as well as by the provisions of the act of March 3, 1855, two modes of punishment for violations of the various provisions of both acts were to be employed; one, a *criminal* proceeding against the master *only*, the other, a *civil* proceeding against the master or both the *master* and *owner* for the *penalties* mentioned in these statutes, *the amount of which are made liens on the vessel.*

For a violation of the provisions of §§ 4252 and 4262, the master of the vessel is to be deemed guilty of a misdemeanor, and is to be punished by *fine and imprisonment.* For a violation of the provisions of §§ 4255, 4256, 4257, 4258 and 4263, *penalties* only are denounced against the *master and owner*, and for a violation of those of § 4266, taken in connection with § 2774, against the master only, to be recovered by a suit, to be instituted in any Circuit or District Court of the United States having jurisdiction in the premises, and in respect to *these penalties only*, is a *lien* created against the vessel. It is these *penalties*, as distinguished from the *fines* which are made part of the punishment of the master for a misdemeanor, for which the vessel, as well as the master and owners, is liable. Nowhere in the statute are the words *fine* and *p  alty* used interchangeably, or treated as synonymous terms.  atever may be the definition given to them in text-books or dictionaries, Congress evidently intended to distinguish one from the other, as well as the modes of procedure by which they were to be enforced, and the persons against whom they were to be enforced. Had Congress intended that the fine by which the master is to be punished, in part, for carrying passengers in excess of the number authorized by law to be carried, or for failing to distribute proper provisions during the voyage should

be a lien on the vessel as well as the penalties denounced against both him and the shipowner, it is reasonable to presume that it would have expressed such intent by using, in § 4270, the word *fines* in connection with the word *penalties* or in some other apt and unmistakable manner have expressed such intent, especially in view of the construction given as early as 1867 by more than one federal court to the fifteenth section of the act of March 3, 1855.

The first case to which reference is made is that of *The Candace*, 1 Lowell, 126. This was decided in February, 1867, and arose under the first and fifteenth sections of the act of March 3, 1855, the provisions of which are, as already submitted, in all substantial respects, the same as those of the Revised Statutes on the same subject, and under which the first count in the present libel is based. The court held, "upon a careful consideration of the statute," that it did "not give a lien upon the vessel for the fine which may be imposed upon him (the master) for a violation of the first section of the act," and the libel was accordingly dismissed. The judgment of the District Court was affirmed on appeal by the Circuit Court.

The next case in which the point under consideration was decided is *United States* v. *Ethan Allen*, 3 Am. Law Review, 372, decided by Judge Hoffman, July 30th, 1868, and the conclusion of the court was the same as that arrived at by Judge Lowell. At the time that the case of *The Ethan Allen* was decided, that of *The Candace* had not been published, and neither the counsel in the former case — who is now submitting the present case for the appellee — nor the court was aware of Judge Lowell's decision, which was first published in April, 1869.

II. The second cause of action is for an alleged violation of the provisions of § 4255 of the Revised Statutes, which relates to the construction of berths. This section is, so far as concerns the question involved, identical with the second section of the act of March 3, 1855.

The amendment made to Rev. Stat. 4264 by the act of February 27, 1877, [these acts are set out in the opinion of the court,] do not enlarge the provisions of §§ 4252, 4253, 4264.

Their language was broad enough to cover *any* vessel, whether propelled by steam or otherwise. Now, as the legislature must be presumed to have intended something by these amendments, it must be presumed that they were intended to restrict the provisions of these sections to vessels *not* propelled in whole or in part by steam, except as to those provisions which relate to the *space* to be appropriated to steerage passengers, and the examination by the inspectors of the customs to ascertain whether the requirements of the law relating to *such space* have been complied with, and these provisions, and these only, are, by the terms of the amendment, made applicable to vessels propelled in whole or in part by steam. To hold otherwise, it is respectfully submitted, will be to give no force or effect whatever to the amendment, and practicably to obliterate it from the statute.

The judicial construction which has been given to the first and second sections of the act of 1855, taken in connection with §§ 9 and 10 of that act, is, at least, equally applicable to a construction of §§ 4252, 4253, 4254, and 4255 of the Revised Statutes taken in connection with § 4264 as amended by the act of February 27th, 1877. See *The Manhattan*, 2 Ben. 88; *The Devonshire*, 8 Sawyer, 209.

It is evident that the word *space* as used in §§ 4253, 4254, 4256 and 4257 relates to the *spaces* mentioned in § 4252, the proportions of which are defined and fixed by that section and by which the provisions of the other sections relating to space are to be governed. Neither in § 4255 of the Revised Statutes nor in § 2 of the act of March 3, 1855, of which the former section is in substance a copy, is the word *space* used. "When, therefore, the word *space* as used in § 4264 as amended by the act of February 27th, 1877, can be clearly referred to every preceding section of the statute, where the word *space* is used, it would seem to be a forced and unwarranted construction of that section to hold that the word *space*, as used therein, includes the interval between the bottom of the berths and the deck, or the construction of the berths parallel to the side of the ship and separated from each other by partitions, or to the length or breadth of the berths.

as provided for in § 4255. It is true that in a certain sense the interval between the bottom of a berth and the deck; the number of superficial feet that a berth, as a structure, may occupy; or the number of superficial feet that the partitions of such berth may inclose, is a space; but, is it not clear that neither of them is one of the *spaces* mentioned in or contemplated by the statute, but that, on the contrary, it is but a *division* of such spaces and not the spaces themselves?

Mr. Justice Matthews, after stating the case, delivered the opinion of the court.

The first question for consideration is, whether the fine imposed upon the master of a vessel by § 4253 of the Revised Statutes, for the violation of that and the preceding section, is a lien upon the vessel itself, to be recovered by a proceeding *in rem*. Section 4252 of the Revised Statutes provides that: "No master of any vessel owned in whole or in part by a citizen of the United States, or by a citizen of any foreign country, shall take on board such vessel, at any foreign port or place other than foreign contiguous territory of the United States, passengers contrary to the provisions of this section, with intent to bring such passengers to the United States, and leave such port or place and bring such passengers, or any number thereof, within the jurisdiction of the United States." It then prescribes the number of passengers which may be lawfully carried by reference to the tonnage and space of the vessel. Section 4253 declares that whenever the master of any such vessel shall carry and bring within the jurisdiction of the United States any greater number of passengers than is allowed by § 4252, he shall be deemed guilty of a misdemeanor, and shall, for each passenger taken on board beyond such limit, be fined $50, and may also be imprisoned for not exceeding six months. Section 4270 is as follows:

"Sec. 4270. The amount of the several penalties imposed by the foregoing provisions regulating the carriage of passengers in merchant vessels shall be liens on the vessel violating

those provisions, and such vessel shall be libelled therefor in any Circuit or District Court of the United States where such vessel shall arrive."

It is argued that the penalties referred to in § 4270 do not include the fine imposed by § 4253. There are other provisions following § 4252 and prior to § 4270, it is said, imposing penalties which are embraced by § 4270 exclusive of all others. Of these, the first is mentioned in § 4255, which particularly prescribes the number and construction of the berths for the use of passengers on any such vessel, and provides that for any violation of the section "the master of the vessel and the owners thereof shall severally be liable to a penalty of $5 for each passenger on board of such vessel on such voyage, to be recovered by the United States in any port where such vessel may arrive or depart." This, it is argued, is a penalty *eo nomine*, for which not only the master, but the owners of the vessel are liable, and to be recovered, not in a criminal prosecution, but in a civil action, and is thus distinguished from the case of the fine imposed by § 4253.

Section 4259 also imposes a penalty of $200 upon the master and owner of any such vessel which shall not be provided with the house or houses over the passage ways, or with ventilators, or with cambooses or cooking ranges with the houses over them, required by previous sections, for each and every violation or neglect to conform to each of these requirements to be recovered by suit in any Circuit or District Court of the United States within the jurisdiction of which such vessel may arrive, or from which she may be about to depart, or at any place within the jurisdiction of such courts, wherever the owner or master of such vessel may be found.

So § 4263 provides for maintaining discipline and habits of cleanliness among the passengers for the preservation and promotion of their health by the master, who is required to cause the apartments occupied by such passengers to be kept at all times in a clean, healthy state ; and the owners of every such vessel are required to construct the decks and all parts of the apartments so that they can be thoroughly cleansed, and to provide a safe and convenient privy or water-closet for the

exclusive use of every 100 of such passengers. The master is also required to disinfect the quarters for the passengers. The section then further provides: "And for each neglect or violation of any of the provisions of this section the master and owner of any such vessel shall be severally liable to the United States in a penalty of fifty dollars, to be recovered in any Circuit or District Court within the jurisdiction of which such vessel may arrive, or from which she is about to depart, or at any place where the owner or master may be found."

The contention is, that the penalties embraced by § 4270 are those, and those only, referred to under that name in §§ 4255, 4259, and 4263, thus excluding from § 4270 the fines imposed upon the master by § 4253, as well as the fine imposed by § 4262. This last named section provides that every master of such vessel who wilfully fails to furnish and distribute provisions in the quantity and cooked in the manner required by law shall be deemed guilty of a misdemeanor, and shall be fined not more than $1000, and imprisoned for a term not exceeding one year; with the proviso, that "the enforcement of this penalty, however, shall not affect the civil responsibility of the master and owners to such passengers as may have suffered from such default."

It is suggested that there is a line of distinction between the punishments provided by §§ 4253 and 4262, which are confined to the master alone, for what seem to be violations of a personal duty charged upon him by the law, and in which it is assumed that the owners of the vessel do not participate, and those penalties imposed by the other sections upon the master and owners for faults of construction and management, where blame may be justly imputed to the owners as well as the master. This construction of the statute was adopted by Judge Hoffman in the United States District Court of California, in the case of *United States* v. *Ethan Allen*, reported in 3 Am. Law Rev., 372. Analyzing the act of Congress of March 3, 1855, 10 Stat. 715, 720, entitled "An act to Regulate the Carriage of Passengers in Steamships and Other Vessels," now carried into the Revised Statutes in the sections under consideration, he said: "It would seem, there-

fore, that Congress intended to distinguish between the 'fines' which on conviction of a misdemeanor the master might be sentenced to pay, and the 'penalties' which in a civil action are made recoverable from the owners as well as the master. The offences for which the master is made criminally liable are wilful violations of the law in which the owners have no complicity. The infractions of the act for which the owners are made responsible in a civil suit relate to houses over passage ways, to ventilators, cambooses or cooking ranges, water-closets, &c., and other arrangements for the comfort and health of the passengers, which it is the owners' duty to provide. For the omission to do so the owners and the vessel are justly made responsible." His conclusion was that these, and these alone, are the penalties which are made liens on the vessel.

The same view was taken by Judge Lowell in *The Candace*, 1 Lowell, 126, decided in 1867. He sums up his statement of the question, referring to the act of March 3, 1855, 10 Stat. 715, 720, as follows: "When, therefore, I consider the kind of penalty mentioned in the first section, which may be partly imprisonment; the person upon whom it is imposed, being the master only; the mode of its enforcement by a criminal trial and sentence; the absence of allusion to any responsibility of the owner or vessel; in all which respects it differs from the mere pecuniary civil penalties imposed by the other sections; and further, that the ordinary office of a lien is to be security for a debt or civil liability, and the great difficulty of applying it in fact in aid of the criminal responsibility of a third person, and find that there are in the statute many civil pecuniary forfeitures or penalties to which the fifteenth section giving these liens is properly and exactly applicable; and that to the only other criminal penalty mentioned in the act it cannot possibly be applied before conviction of the master, because the amount is not fixed until then — I am constrained to conclude that it does not give a lien upon the vessel for the fines which may be imposed upon him for a violation of the first section of the act."

It is to be observed, however, that in the original act of

March 3, 1855, the first section of which corresponds with §§ 4252 and 4253 of the Revised Statutes, the fine thereby imposed on the master is also spoken of as a penalty. The language is, that "every such master shall be deemed guilty of a misdemeanor, and, upon conviction thereof, before any Circuit or District Court of the United States, shall, for each passenger taken on board beyond the limit aforesaid, or the space aforesaid, be fined in the sum of fifty dollars, and may also be imprisoned, at the discretion of the judge before whom the penalty shall be recovered, not exceeding six months."

In § 4253 of the Revised Statutes the phrase in which the word "penalty" occurs in the original act is omitted for the sake of condensation, but without any change in the sense. The phrase, however, is retained in § 4262, where the fine and imprisonment prescribed as a punishment for the misdemeanor of the master is spoken of as a penalty, the enforcement of which shall not affect the civil responsibility of the master and owners to the passengers who may have suffered by the fault. The word "penalty" is used in the law as including fines, which are pecuniary penalties. The language of § 4270 includes all that may be properly designated as penalties imposed by any of the previous provisions regulating the carriage of passengers in merchant vessels. It is the amount of these penalties which, being imposed by the foregoing provisions, are declared to be liens on the vessel violating those provisions; and in view of that section the vessel is considered and treated as itself violating those provisions, whether the act constituting the offence be the act of the master alone or that of the master and owners. In other words, this section of the statute does not point to any distinction such as that now insisted on, but seems intended to embrace as liens upon the vessel itself the amount of every penalty imposed by a previous section of the statute for every offence against its provisions.

The fact that the master is also liable, as a part of his punishment, to be imprisoned does not constitute any such incongruity as to make the construction now put upon § 4270 unreasonable. It is the fine that is referred to as the penalty, as is distinctly pointed out in the language of § 4270 when it

speaks of the amount of the several penalties; that is to say, pecuniary sum which may be awarded as a penalty. Neither is it an insurmountable inconvenience affecting this construction of the law that the extent of the lien declared by § 4230 cannot be ascertained until after a conviction of the master and the assessment of the amount of the fine imposed upon him. This is undoubtedly true in respect to § 4262, because there the fine is only made ultimately certain by the sentence of the court, to whom the discretion is confided of imposing any amount not in excess of $1000. Neither is there anything in the nature of the master's offence, as described in §§ 4252, 4253, and 4262, which should constitute the fines assessed under those section exceptions out of the provision for a lien contained in § 427 . There is nothing in the nature of the case to exonerate the owner of the vessel from responsibility for the acts of the master in overcrowding the vessel with passengers contrary to law. By § 4260 and § 4261 the owner is expressly made responsible for the act of the master in not putting on board for the use of the passengers a sufficient supply of provisions and water; and the owner, as well as the master, is by § 4261 made expressly liable to the extent of $3 a day for each passenger put on short allowance in consequence of a failure of the master to supply the proper quantity and quality of provisions and water as required by law.

It seems to us, therefore, that the direct and express meaning of § 4270 is to make the vessel liable *in rem* as itself guilty of the offence for every pecuniary penalty that may be assessed for a violation of any of the previous provisions of the statute regulating the carriage of passengers in merchant vessels.

The second count of the libel is for the recovery of the penalty provided by § 4255. That section is as follows:

"No such vessel shall have more than two tiers of berths. The interval between the lowest part thereof and the deck or platform beneath shall not be less than nine inches; and the berths shall be well constructed, parallel with the sides of the vessel and separated from each other by partitions, as berths ordinarily are separated, and shall be at least six feet in length, and at least two feet in width, and each such berth shall be

occupied by no more than one passenger; but double berths of twice the above width may be constructed, each berth to be occupied by no more and by no other than two women, or by one woman and two children under the age of eight years, or by husband and wife, or by a man and two of his own children under the age of eight years, or by two men, members of the same family. For any violation of this section, the master of the vessel, and the owners thereof, shall severally be liable to a penalty of five dollars for each passenger on board of such vessel on such voyage, to be recovered by the United States in any port where such vessel may arrive or depart."

This section corresponds with § 2 of the act of March 3, 1855. Section 10 of the same act was as follows:

"That the provisions, requisitions, penalties, and liens of this act, relating to the space in vessels appropriated to the use of passengers, are hereby extended and made applicable to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, and navigating from, to, and between the ports, and in manner as in this act named, and to such vessels and to the masters thereof; and so much of the act entitled 'An act to amend an act entitled an act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam, and for other purposes,' approved August thirtieth, eighteen hundred and fifty-two, as conflicts with this act, is hereby repealed; and the space appropriated to the use of steerage passengers in vessels so as above propelled and navigated is hereby subject to the supervision and inspection of the collector of the customs at any port of the United States at which any such vessel shall arrive, or from which she shall be about to depart; and the same shall be examined and reported in the same manner and by the same officers by the next preceding section directed to examine and report."

The act of August 30, 1852, referred to in this section, provided for the inspection of steam vessels and their equipment by inspectors appointed for that purpose, on whose favorable report a license was issued, without which it was unlawful for

the vessel to engage in navigation. One object of the inspection was to determine whether the vessel had suitable accommodations for her crew and passengers, and in the certificate of inspection to be furnished by the inspectors to the collector of the district they were required to state the number of staterooms, the number of berths therein, the number of other permanent berths for cabin passengers, the number of berths for deck or other passengers, the number of passengers of each class for whom she had suitable accommodations, and, in case of steamers sailing to or from any European port, or to or from any port on the Atlantic or Pacific, a distance of 1000 miles or upwards, the number of each she was permitted to carry, and, in case of a steamer sailing to any port a distance of 500 miles or upwards, the number of deck passengers she was permitted to carry. The evident purpose of § 10 of the act of March 3, 1855, was to make the provisions of that act, relative to the inspection of vessels, applicable to all vessels propelled in whole or in part by steam, which were within the provisions of the act of August 30, 1852, so as to have but one system of inspection, in the particulars specified, applicable to vessels of every description. The act of March 3, 1855, by its terms, did apply to all vessels, including steamers as well as sailing vessels, but not to vessels enrolled and licensed for the coasting trade; the latter were provided for by the act of August 30, 1852; and the 10th section of the act of March 3, 1855, was evidently introduced, as we have said, for the purpose of establishing uniformity in respect to regulations for the accommodation and safety of steerage passengers in all vessels engaged in the business of carrying such passengers, whether between ports in the United States or between them and foreign ports. This section, however, was omitted in the revision of the statutes, and that omission was supplied by the act of February 27, 1877, 19 Stat. 240, 250, c. 69, amending § 4264 of the Revised Statutes by adding thereto the substance of the provisions of the omitted § 10 of the act of March 3, 1855, so as to restore the law in that particular to the condition in which it was under the last named act. That amendment is in the following language: "The provisions, requisi-

tions, penalties, and liens enumerated in the several sections of this chapter relating to the space in vessels appropriated to the use of passengers are hereby extended and made applicable to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, and navigating from, to, and between the ports and in manner as herein named, and to such vessels and to the masters thereof; and the space appropriated to the use of steerage passengers in vessels as above propelled and navigated is hereby made subject to the supervision and inspection of the collector of customs in any port in the United States at which any such vessel shall arrive or from which she shall be about to depart; and the same shall be examined and reported in the same manner and by the same officers directed in the preceding section to examine and report."

It is now argued that the only sections of this chapter relating to the space in vessels appropriated to the use of passengers are §§ 4252, 4253, and 4254, which correspond with the first section of the act of March 3, 1855. The reason assigned in support of this view seems to be that they are the only sections which refer expressly to spaces appropriated to the use of passengers. Section 4252 declares that the spaces appropriated for the use of such passengers, not occupied by stores or other goods, not the personal baggage of such passengers, shall be in certain proportions; that is to say, on the main and poop decks or platforms and in the deck houses, if there be any, one passenger for each sixteen clear superficial feet of deck, if the height or distance between the decks or platforms shall not be less than six feet, and on the lower deck, not being an orlop deck, if any, one passenger for each eighteen clear superficial feet, if the height or distance between the decks or platforms shall not be less than six feet, but so as that no passenger shall be carried on any other deck or platform, nor upon any deck where the height between decks is less than six feet. But on two-deck ships, where the height between decks is seven and one-half feet or more, fourteen feet of superficial deck shall be the proportion required for each passenger. Section 4253 imposes the penalty upon the master for carrying any greater number of

passengers than in the proportion to the space or tonnage prescribed in the preceding section. Section 4254 authorizes, for the safety or convenience of the vessel, portions of the cargo to be placed or stored in places appropriated to the use of passengers on certain conditions, but requires that the space thus occupied shall be deducted from " the space allowable for the use of passengers." It also authorizes the construction of a hospital " in the spaces appropriated to passengers " to be included " in the space allowable for passengers," not to exceed one hundred superficial feet of deck or platform. Then follows § 4255 above quoted, on which the second count of the libel is founded, which has reference to the construction of the berths to be occupied by the passengers. It prescribes the interval between the lowest part of any tier of berths and the deck or platform beneath to be not less than nine inches; that the berths shall be well constructed, parallel with the sides of the vessel, and separated from each other by partitions, and shall be at least six feet in length and two feet in width, and specifies how they shall and shall not be occupied by passengers. It is quite true that in § 4255 there is no express reference to spaces appropriated to the use of passengers and that phrase does not occur in it, but nevertheless the section does plainly relate to the space in vessels appropriated to the use of passengers. It describes how the berths in which the passengers sleep shall be constructed, separated, and occupied. These berths are within the space which by the previous sections must be allowed for and allotted to the use of passengers; they constitute a part of that very space and are included in it. The language, therefore, of § 4264, as amended by the act of February 27, 1877, 19 Stat. 240, 250, applies directly so as to subject vessels propelled in whole or in part by steam, and navigating from and to and between the ports therein named, to the provisions, requisitions, penalties, and liens included within § 4255 as one of the several sections of the chapter relating to the space in vessels appropriated to the use of passengers.

It is true that the contrary construction of these sections of the act was adopted by Mr. Justice Blatchford, then District

Judge in the Southern District of New York, in the case of the Steamship *Manhattan*, 2 Ben. 88, whose decision was affirmed on appeal in the Circuit Court in October, 1868, by Mr. Justice Nelson, and that case was followed as an authority in the case of *The Devonshire*, 8 Sawyer, 209, by Judge Deady in 1882. In the latter case the District Judge seems to have been influenced in some degree by the consideration that the enactment by Congress of the omitted § 10 of the act of March 3, 1855, as an amendment to § 4264 of the Revised Statutes by the act of February 27, 1877, must be considered to have restored the section with the judicial construction which had been given to it in the case of *The Manhattan*. We do not, however, consider this circumstance as entitled to the weight given to it by him, and which we are asked in the argument by counsel to give in the present case. It is certainly not sufficient, in our judgment, to overcome what seems to us to be the clear meaning of the statute derived from its language and its reason. This view, indeed, is forcibly presented by the learned District Judge in the case of *The Devonshire*, where he says (p. 213): "The argument of the district attorney in favor of the libel is that the provisions in § 2 are regulations relating to the 'space' appropriated to passengers, and therefore made applicable to steam vessels by the operation of § 10, because by them the 'space' between each berth, and that appropriated to each passenger therein, is prescribed. And when we consider that the evils intended to be prevented by § 2 are as likely to exist in the case of steerage passengers carried in steamships as those against which § 1 is intended to guard, it is not without force. There is quite as much need that a steerage passenger shall have the 'space' and privacy provided in § 2 when he lies down to sleep or is prostrated with sickness, as that he shall have the general moving and breathing 'space' between decks provided in § 1; and although the word 'space' is not used in § 2, still that is the subject of it, and its division and appropriation among passengers for the purpose of berths are thereby carefully and minutely regulated." We think these considerations are conclusive in support of the sufficiency of the second count.

The third count of the libel is for an alleged violation of § 4266 of the Revised Statutes. That section provides that the master of any vessel arriving in the United States from any foreign place whatever, at the same time that he delivers a manifest of the cargo or makes report or entry of the vessel pursuant to law, shall also deliver a report to the collector of the district in which such vessel shall arrive and a list of all the passengers taken on board of the vessel at any foreign port or place, verified by his oath, in the same manner as directed by law in relation to the manifest of the cargo. In that list he is required to designate particularly the age, sex, and occupation of the passengers, respectively, the part of the vessel occupied by each during the voyage, the country to which they severally belong, and that of which it is their intention to become inhabitants, and whether any and what number have died on the voyage; and the refusal or neglect of the master to comply with the provisions of this section is subjected to the same penalties, disabilities, and forfeitures as are provided for a refusal or neglect to report and deliver a manifest of the cargo. The penalties, disabilities, and forfeitures referred to in this section are those imposed by § 2774, which declares that every master who shall neglect or omit to make either of the reports and declarations thereby required shall for each offence be liable to a penalty of $1000.

This section does not subject the vessel itself to any liability for this penalty, and we are not referred to any general provision of the statute imposing such a liability on the vessel, akin to that contained in § 3088 making the vessel liable whenever her owner or master is subject to a penalty for a violation of the revenue laws of the United States. It follows that the penalty imposed for a violation of § 4266 cannot be charged as a lien on the vessel, under the third count of the libel, unless that section is made applicable to vessels propelled in whole or in part by steam. This can be only on the supposition that this effect is given to it by the amendment to § 4264.

We find it impossible to adopt the construction that makes § 4266 one of those sections relating to the space in vessels appropriated to the use of passengers, which by the amendment

to § 4264 are extended and made applicable to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, and navigating from, to, and between the ports and in manner as therein named, and to such vessels and to the masters thereof. Doubtless one of its useful purposes was to enable the collector of the district to ascertain, from the verified list of passengers which it required to be furnished, whether the provisions of the statute had been complied with, which limited the number of passengers according to the tonnage and space allowed in the vessel for steerage passengers; but we think it would be a strained construction of the act for that reason to include the section under consideration in those made applicable to steam vessels, because they relate to the space in such vessels appropriated to the use of steerage passengers.

The only construction of the law which would subject the vessel to the lien of the penalty referred to in § 4266, by virtue of § 4270, would be that which made all the provisions of the chapter applicable to vessels propelled in whole or in part by steam, as well as to sailing vessels, on the ground that the language of the various sections makes no distinction as to vessels on account of their propelling power. It is certainly true that the language of all the sections is large enough to include steam vessels as well as sailing vessels, but to give that application to this legislation is to deprive of its whole effect the original § 10 of the act of March 3, 1855, and the corresponding amendment introduced by the act of February 27, 1877, to § 4264. That section extends and makes applicable to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, navigating from, to, and between the ports and in the manner as in the act named, and to such vessels and to the masters thereof, the provisions, requisitions, penalties, and liens of the act relating to the space in vessels appropriated to the use of passengers. If without that section all the provisions of the act were applicable to steam vessels, then the section itself would have no meaning. To give it any effect whatever it is necessary to suppose that it was the intention of Congress that no provisions of the act

of March 3, 1855, should apply to steam vessels, except those that were made applicable to them by § 10. By extending to them the particular provisions named in the section, the inference is unavoidable that all other provisions are thereby excluded from a similar application. This view is strengthened by the fact that the section having been omitted from the revision, it was restored by the act of February 27, 1877. By omitting § 10 from the revision, it was probably the view of the revisers that the whole chapter should apply to steam vessels as well as sailing vessels. It seems to have been the intention of Congress to correct this view by restoring the original § 10 as an amendment to § 4264. We are, therefore, of opinion that § 4266 does not apply to vessels propelled in whole or in part by steam, and that the third count of the libel cannot be sustained.

Our conclusion, therefore, on the whole case is, that the libel sets out a sufficient cause of action, and entitles the United States, upon proof of the facts, to recover under the first and second counts, but that it must be dismissed as to the third. Under the first count, that recovery must be limited to the amount adjudged as a penalty against the master by way of fine upon the criminal information against him. The penalty recoverable against the vessel, and which by § 4270 is made a lien upon it, is not an additional penalty, but is the same penalty which by § 4253 is to be adjudged against the master himself in the criminal prosecution for the misdemeanor, and payment on the part of either is satisfaction of the whole liability. It is the amount of that fine so assessed that is made a lien on the vessel. Under the second count it does not appear that any proceeding for the penalties therein sought to be recovered had been previously taken against the master. The difficulty of further proceeding under that count, however, is removed by a stipulation between the parties contained in the record. This stipulation provides that the liability, if any, of the master of the steamship, for the penalties provided for in §§ 4255 and 4266 of the Revised Statutes, may be ascertained on the trial of the cause itself, as fully and with the same force and effect as if the same were ascertained on a

trial of a proceeding against the master, to recover the penalty, and a judgment therefor had been rendered against him; and all exceptions to the libel that the liability of the master, if any, had not been ascertained on a proceeding against him prior to the filing thereof were thereby waived.

For the reasons assigned, the decree of the Circuit Court is

*Reversed, and the cause remanded with directions to take further proceedings therein, in accordance with this opinion.*