UNITED STATES v. COBB.

(District Court, D. Maryland. March 31, 1906.)

1. SHIPPING — CARRIAGE OF GOODS — HARTER ACT—ENFORCEMENT BY CRIMINAL PROSECUTION.

The provisions of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), making it unlawful for the manager, agent, master, or owner of any vessel to insert in bills of lading provisions by which they are relieved from liability for negligence, or to refuse to issue bills of lading containing certain statements, and making any one violating such provisions liable to a fine, makes it a criminal statute; and one violating either of such provisions is subject to indictment and prosecution therefor.

2. SAME—INDICTMENT—DESCRIPTION OF OFFENSE.

In an indictment for issuing a bill of lading containing provisions in violation of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), which avers that such bill was issued by defendant, and which sets out a copy of such bill, from which it appears that defendant's name was signed thereto "per" another, it is unnecessary to allege that it was so signed by defendant's authority, which is a matter of proof.

3. SAME—BILL OF LADING—LEGALITY.

A bill of lading covering a shipment of walnut logs from a port of the United States to a foreign port construed, and held to reasonably comply with the requirements of section 4 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2947]), and not to contain any provisions in violation of sections 1 and 2 which would sustain an indictment against the agent issuing the same.

On Demurrer to Indictment.

John C. Rose and Morris A. Soper, for the United States.

Jno. J. Donaldson and Wheeler, Cortis & Haight, for defendant.

MORRIS, District Judge. The indictment sets forth that a certain John L. Alcock was engaged in the business of exporting lumber from the port of Baltimore to the port of Hamburg, Germany, and the defendant Cobb was the agent of a line of steamships called the "Hamburg-American Line," engaged in transporting merchandise between ports of the United States and said port of Hamburg, Germany, and that on April 17, 1905, at Baltimore, Cobb, as agent of said line of vessels, issued to said Alcock a bill of lading for 31 walnut logs to be carried from Baltimore to Hamburg, and did insert in said bill of lading certain clauses and agreements whereby the said vessels and the owners thereof were relieved, and were intended to be relieved, from liability for loss and damage from negligence, fault, failure in proper loading, stowage, custody, and proper delivery of the said 31 walnut logs committed to their charge, which said clauses were "Contents and Condition of Contents of Packages Unknown," "Shipper's Load and Count," that "the carrier shall not be liable for loss or damage oc-

casioned by breakage"; "that the carrier shall not be concluded as to the correctness herein of quality, quantity and contents"; "that the carrier shall not be liable for risk of craft, hulk or transshipment"; that said Alcock did then and there demand of said Cobb as agent as aforesaid a bill of lading omitting the said clauses, and stating therein the marks necessary for the identification and the quantity of said merchandise, and said Cobb refused to issue such a bill of lading contrary to the statute. By subsequent counts based upon each of the beforementioned clauses the insertion of each of the clauses by Cobb contrary to the demand of Alcock is charged as a distinct offense. In the seventh and last count of the indictment the bill of lading is set out verbatim as it was actually issued, with a like charge as in the first count.

The demurrer assigns as causes for demurrer:

"(1) That the indictment and each and every count thereof is insufficient in law.

"(2) That each and every count fails to allege facts constituting an offense against the laws of the United States.

"(3) That the insertion in the bill of lading of the clauses mentioned did not constitute an offense against the United States.

"(4) That each and every count fails to allege that the defendant was manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports.

"(5) That it appears by the seventh count that the bill of lading alleged to have been issued by the defendant was not issued by him, but was signed by one 'C. W. S.', and that it is not alleged that said 'C. W. S.' was thereto duly authorized by the defendant or by the Hamburg-American Line.

"(6) That it appears from the bill of lading that it did, in fact, state the marks necessary for identification and quantity of said merchandise.

"(7) That each and every count is in other respects informal, insufficient, and defective."

The indictment must rest upon the first and the fourth and fifth sections of the Harter act. Act Feb. 13, 1893, c. 105, 27 Stat. 445, 446 (U. S. Comp. St. 1901, p. 2947). The first section declares, in substance, that it shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading any clause whereby it, he, or they shall be released from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect. Section 4 enacts that it shall be the duty of the owner or owners, masters, or agent of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to issue to shippers of any lawful merchandise a bill of lading stating the marks necessary for identification, number of packages, stating whether it be carrier's or shipper's weight, and apparent order or condition of such merchandise or property delivered to and received by the owner, master, or agent of the vessel for transportation, and such document shall be prima facie evidence of the receipt of the merchandise therein described. Section 5 enacts that for a violation of any provisions of

the act the agent, owner, or masters of the vessel guilty of such violation, and who refuses to issue on demand the bill of lading provided for, shall be liable to a fine not exceeding $2,000. The amount of the fine and costs for such violation shall be a lien upon the vessel whose agent, owner, or master is guilty of such violation, and such vessel may be libeled therefor in any District Court of the United States within whose jurisdiction the vessel may be found. One-half of such penalty shall go to the party injured by such violation and the remainder to the government of the United States.

It is first urged in support of the demurrer that the language of the act is not appropriate and sufficient to declare the doing of anything forbidden by it, or the failure to do anything commanded by it, an offense to be punished by criminal indictment; that the language indicates that the penalty is to be recovered in a civil suit by a qui tam action; that the Harter act is not a criminal statute, but deals only with civil rights and duties. There can be no doubt that Congress has the power to regulate transportation between the United States and foreign ports, and has the power to make the acts which by law it forbids, as between shipper and carrier, criminal acts. Considering that this legislation of Congress declares it to be unlawful for the carrier to insert certain clauses in any bill of lading relieving the carrier from responsibility for negligence, and declaring it to be unlawful to refuse to state therein certain matters intended to be for the protection of the shipper, and considering the fact often declared by the courts that the shipper in accepting the bill of lading which the carrier is willing to issue acts under a practical compulsion and is not at liberty to accept or decline the proposed contract as one who is a free agent, it is quite clear, I think, that the intention of Congress was to come to the relief of the shipper by affording him an effective remedy. The intention, it is apparent, was to make it an act punishable by fine for the carrier to refuse to issue to the shipper such a bill of lading as the act of Congress declared was lawful and was a compliance with the duty of the carrier. The language used is:

"For any violation of any provisions of the act, the agent, owner, * * * guilty of such violation and who refuses to issue on demand the bill of lading herein provided for shall be liable to a fine not exceeding two thousand dollars. * * * One-half of such penalty shall go to the party injured by such violation, and the remainder to the Government of the United States."

Under our system, the approved proceeding for enforcing the liability to a fine imposed upon any one who has been guilty of a violation of law is by indictment, conviction, and sentence in a criminal court. To be liable to a fine is to be punishable by a fine, and to enact that an unlawful act is punishable by a fine is to declare that it is contrary to the public justice of the enacting sovereign. U. S. v. Reisinger, 128 U. S. 398–402, 9 Sup. Ct. 99, 32 L. Ed. 480.

Section 5 also provides that:

"The amount of the fine and costs for such violation shall be a lien upon the vessel whose agent, owner or master is guilty of such violation, and such vessel may be libeled therefor in any District Court of the United States within whose jurisdiction the vessel may be found."

This requires that the recovery by libel against the vessel be limited to the amount of the fine and the costs adjudged against the agent, owner, or master of the vessel, and requires that the criminal proceeding against such agent, owner, or master be first prosecuted, and that it has resulted in the imposition of a fine by the sentence of the court. The Strathairly, 124 U. S. 558–580, 8 Sup. Ct. 609, 31 L. Ed. 580. In the present case there is no particular steamer of the Hamburg-American Line named, so that there could not be a libel filed, but the owners and agents of a line of steamers are, it seems to me, within the provisions of the act, and, if guilty, liable to a fine.

It is further urged by counsel for the defendant that no indictment will lie under the Harter act for inserting in the bill of lading any clauses which the first section declares to be null and void and of no effect. I cannot assent to this proposition. It is a violation of the first section of the provisions of the act to insert in any bill of lading any clause relieving the carrier from liability for loss arising from the negligence of the manager, agent, master, or owner of the vessel, and the fact that such a clause is declared to be null and void and of no effect does not alter or affect the guilt of the one who unlawfully inserts the clause in the bill of lading. The lawful bill of lading as declared by the act is one which does not contain any such clause, and one who on demand refuses to issue a lawful bill of lading—that is to say, one without such clauses—is declared by the act to be liable to the fine.

It is also urged that the bill of lading shows that it was not issued by the defendant, but was signed by one "C. W. S.," and that it is not alleged that said "C. W. S." was thereto duly authorized. It does not appear to me that such an allegation is required. It is charged that the bill of lading was issued by the defendant, and as set out in the indictment the defendant's name is signed to it. It is matter of proof to show that his name was signed by some one duly authorized.

It is next to be considered whether or not the specific refusals charged in the different counts of the indictment or any of them are by the Harter act declared to be unlawful and punishable. Do any of the clauses which it is charged the defendant insisted upon inserting in the bill of lading purport to relieve the carrier "from liability from loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery," of the property committed to his charge? Or do any of the refusals charged in the indictment constitute a violation of the duty imposed by the act on the carrier to issue a bill of lading which shall state with reference to the merchandise shipped "the marks necessary for identification," "the number of packages or quantity, stating whether it be carrier's or shipper's weight," or the "apparent condition of such merchandise or property delivered to and received by" the carrier. The bill of lading actually issued is set out in the seventh count of the indictment. From the bill of lading it appears that the merchandise was received at Reading, Pa., to be carried to Baltimore, and thence by the Hamburg-American Line to Hamburg, Germany, and to be there delivered as consigned. The language in the bill of lading issued is as follows:

"Pennsylvania Railroad Company in Connection with Other Carriers on the Route. Received at Reading, Pennsylvania, from John L. Alcock and Company, the following property in apparent good order, except as noted, contents and condition of contents of packages unknown, marked, numbered, consigned, and destined as indicated below:

"Consignee and Destination:  To order John L. Alcock & Company, Hamburg, Germany.  Party to be Notified:  Nottebohn & Co., Hamburg, Germany.  Marks and Numbers:  Articles:  One (1) car load of logs (31 walnut logs) shipper's load and count P. R. R. 8722, shipper's weight 56,700 lbs. (subject to correction) to be carried to the port (A) Baltimore and thence by Hamburg American Line to the port (B) Hamburg, Germany, or so near thereto as steamer may safely get, etc., etc., and to be there delivered in like good order and condition as above consigned, etc., etc., upon payment immediately on discharge of the property of the freight thereon at the rate from Reading to Hamburg of 26½ cents * * * per 100 lbs. gross weight."

Among the other provisions are the following:

"No carrier is bound to carry said property by any particular train or vessel. * * * That this shipment until delivery at the port (B) (Hamburg, Germany) second above mentioned, is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved the 13th of February, 1893, and entitled 'An act relating to the navigation of vessels,' etc."

This bill of lading is dated at Baltimore the 17th day of April, 1905, and is signed "G. H. Cobb, D. S., Agent on Behalf of Carriers Severally, but not Jointly, per C. W. S." Does this bill of lading with reference to the property shipped, to wit, 31 walnut logs, reasonably gratify the requirements of section four of the Harter act? Does it state the marks necessary for identification? Other than the description given in the bill of lading, it is not charged that there were any marks on the logs by which they could be identified. Is the number of packages or quantity given stating "whether it be carrier's or shipper's weight"? This requirement would seem to have been gratified as fully as was reasonably possible by the statement "one car load of logs, 31 walnut logs, shipper's load and count, P. R. R. 8722, shipper's weight, 567,000 lbs. (subject to correction)."

Section 4 requires the bill of lading to state whether the weight is shipper's or carrier's. As to logs' weight, this is not so important in respect to the right delivery of the property as the number of the logs, and, as the purpose of section 4 of the act is the protection of the shipper, if with respect to articles usually computed by weight it is required to be stated whether it is carrier's or shipper's weight, is it not allowable with respect to logs to state that the number of logs, which is the method of designating the quantity, is by the shipper's count? The other requirement with regard to stating the apparent order or condition is gratified by the statement "in apparent good order except as noted." There being no notation, the clause stands as a simple statement of apparent good order. I can find nothing in the bill of lading which as to the matters charged in the indictment and as to a shipment of 31 walnut logs violates the duty imposed on the carrier by section 4. Is there anything charged in the indictment which as to such a shipment as 31 walnut logs is violative of sections 1 or 2 of the Harter act? It is to be noticed preliminarily that the bill of lading itself expressly declares that the shipment is made subject to all the terms

and provisions of the Harter act, so that, if possible, it is proper to construe the bill of lading as conforming to that act. As was said in Bank of Kentucky v. Adams Express Co., 93 U. S. 174–181, 23 L. Ed. 872:

"It is not to be presumed that the parties intended to make a contract which the law does not allow. Looked at from this standpoint, can it be said that any of the claims objected to can be construed as plainly attempting, contrary to the first section, to relieve the carrier from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise committed to its or their charge?"

Is there any clause which contrary to the second section in any wise, lessens, weakens, or avoids the obligation of the owner of the vessel to exercise due diligence to properly equip, man, provision, and outfit said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents, or servants to carefully handle and stow her cargo and to care for and properly handle the same? I can find nothing. Not liable for loss or damage occasioned by breakage means, and has been held to mean, breakage which occurs without the negligent fault or failure of the owners of the vessel or their agents or servants, and that exemption the carrier is entitled to contract for.

The meaning of the clause, "not liable for risk of craft, hulk, or transshipment," is not altogether clear, and in a criminal case it is not upon mere presumption to be held unlawful. U. S. v. Brewer, 139 U. S. 278–288, 11 Sup. Ct. 538, 35 L. Ed. 190. It probably means that in case of necessary transshipment, if the carrier has exercised due diligence to provide proper, fit, and seaworthy craft or appliances for the transshipment, it shall not be held liable for damage. The Hadji (D. C.) 16 Fed. 861; Insurance Company v. N. G. Lloyd & Co. (D. C.) 106 Fed. 973. Exemption to this extent is contemplated by the act.

Is there anything charged in the indictment and contained in the bill of lading which violates section 4? Does the bill of lading state the marks necessary for identification? It is a sufficient answer that it is not alleged that there were any marks on the logs which were not put in the bill of lading. Does the bill of lading give the number of packages? In this case one "car load consisting of 31 walnut logs P. R. R. 8722" was all that could be given. Was it a violation of the fourth section to state that the 31 walnut logs said to be on the car were the "shipper's load and count"? By the fourth section it is made the duty of the carrier to state whether the weight was ascertained by the carrier or the shipper, and, when the merchandise is computed by the number of the articles, I can see no violation of the fourth section in stating that the count has been made by the shipper. This is a bill of lading dated at Baltimore on April 17th for a shipment received on the car at Reading on April 15th, and the difficulty, inconvenience, and delay of a special count by the carrier at Baltimore is quite obvious.

Finally, is the clause, "that the carrier shall not be concluded as to the correctness of statements herein of quality, quantity and contents,"

prohibited by any section of the Harter act? Section 4 enacts that such a bill of lading as the act makes it the duty of the carrier to give shall be prima facie evidence of the receipt of the merchandise therein described. That means that the carrier may show that there was mistake in the statement of the quality, quantity, and contents, and that is all that is meant by saying that the statement is not conclusive.

For the reasons stated, the defendant's demurrer to the indictment is sustained, and judgment will be entered that the defendant be dismissed and discharged from the matters in the said indictment specified.