**UNITED STATES of America, Libellant,**

v.

**THE Vessel JUPITER, her engines, tackle, etc., Respondent.**

No. 448.

United States District Court
S. D. Florida, Tampa Division.

June 4, 1957.

Richard Kelly, Asst. U. S. Atty., Tampa, Fla., for libelant.

Hervey Yancey, Tampa, Fla., for respondent.

BARKER, Chief Judge.

This is a suit in admiralty brought by the United States in rem against the steamship Jupiter for violation of the Oil Pollution Act of June 7, 1924, c. 316, 33 U.S.C.A. §§ 431–437, prohibiting the discharge of oil into the coastal navigable waters of the United States.

The libel alleges that on April 24, 1956, there was discharged from the Jupiter, a vessel using oil as fuel for the generation of propulsion power, oil into the coastal navigable waters of the United States, in violation of the mentioned act, and that thereupon the Jupiter became liable for the penalty specified in 33 U.S.C.A. § 434, to be fixed by this Court, not exceeding $2500 nor less than $500.

By exceptions to the libel the claimant urges that a conviction of some person or corporation of a violation of the Oil Pollution Act and a sentence to pay a specified fine is a condition precedent to the bringing of the libel against the vessel, and that the vessel's liability is measured by and confined to the penalty imposed in such criminal proceeding.

The precise point raised does not appear to have been determined by any court with respect to the Oil Pollution Act. It has, however, been determined with respect to other similar acts.

In P. Sanford Ross, Inc., v. United States, 250 U.S. 269, 39 S.Ct. 452, 453, 63 L.Ed. 977, the same question presented here was raised concerning The New York Harbor Act of June 29, 1888, c. 496, 33 U.S.C.A. §§ 441–451, which prohibits the discharge of refuse in New York harbor. There the Supreme Court said: "The principal contention of appellant is that the purpose of the statute was to make the vessel responsible only for such pecuniary penalties as might be assessed against the offending persons in criminal proceedings, and hence that the conviction and fining of such persons is a condition precedent to the maintenance of a suit against the vessel. * * * The act of Congress here in question imposes a direct liability upon the vessel for the pecuniary penalties prescribed, and declares that it may be proceeded against summarily by libel in any District Court of the United States having jurisdiction thereof. This precludes the idea that the proceeding by libel is to be deferred to await the possibly slow course of criminal proceedings against the persons individually responsible. It treats the offending vessel as a guilty thing, upon

the familiar principle of the maritime law, and permits a proceeding against her in any court of admiralty 'having jurisdiction thereof'—meaning any court within whose jurisdiction she may be found. Libels of this character, without previous conviction of the responsible persons, have been entertained under this act from the time of its enactment, and dealt with upon the merits, without question as to the jurisdiction until now. * * * There is no difficulty, on constitutional or other grounds, about assessing an unliquidated fine in the admiralty; and if it be not a proceeding for enforcement of a penalty or forfeiture incurred under a law of the United States * * * the act of 1888 itself confers jurisdiction."

A like decision has been made concerning the Act of Mar. 3, 1899, c. 425, 33 U.S.C.A. §§ 407–412, which prohibits the discharge of refuse into any navigable water of the United States. The Scow No. 9, D.C.Mass.1907, 152 F. 548.

Moreover, the issues of whether there has been a violation of the Oil Pollution Act, and if so, the amount of the penalty to be imposed, have been determined in numerous reported decisions of proceedings in rem against the vessel only, obviously without any prior criminal action to convict any individuals or corporations responsible. cf. United States v. The Catherine, 4 Cir., 1954, 212 F.2d 89; The Pan-Am, 3 Cir., 1945, 148 F. 2d 925; The Sunset Una, D.C.S.D.Tex. 1944, 54 F.Supp. 464; United States v. The Gold Shell, S.D.N.Y. (1944), 1944 A.N.C. 306; United States v. The Pan-Am, D.C.N.J. (1943), 1943 A.N.C. 1151; United States v. The Barge Seaboard No. 77, S.D.N.Y. (1948), 1948 A.M.C. 567.

The claimant points out that the Oil Pollution Act, 33 U.S.C.A. § 434, provides that the penalty thereunder "shall constitute a lien" on the vessel involved, and that neither the Act of 1888 nor the Act of 1899 contain such language. Claimant contends that, because of this difference in wording, the principle of The Strathairly, 124 U.S. 558, 8 S.Ct. 609, 31 L.Ed. 580, rather than that of P. Sanford Ross, Inc., v. United States, supra, should be applied. The Supreme Court considered the Strathairly case in P. Sanford Ross v. United States, and distinguished it on the basis that the Act of 1888 imposes a direct liability on the vessel for the penalty, whereas the statute involved in the Strathairly case merely made penalties imposed on others a lien on the vessel. It is true that the Oil Pollution Act expressly provides that its penalties shall constitute a lien on the vessel, but it also provides that the vessel "shall be liable for the pecuniary penalty specified in this section, * * *."

The purpose and the language of the Oil Pollution Act are substantially identical with those of the New York Harbor Act of 1888 and the Act of March 3, 1899 insofar as the question presently under consideration is concerned. I see no basis for making any distinction between them. On the foregoing authorities, I hold that a criminal proceeding against an individual or corporation is not a condition precedent to the bringing of a libel in rem in admiralty to impose a penalty against a vessel under the Oil Pollution Act, 33 U.S.C.A. §§ 433, 434.

The exceptions of the claimant will be overruled.