UNITED STATES ex rel. PRESSPRICH & SON CO. v. JAMES W. ELWELL & CO. et al. (two cases).

(Circuit Court of Appeals, Second Circuit.    April 10, 1918.)

Nos. 172, 173.

1. SHIPPING ⬅155—ACTION FOR PENALTY.
   The federal District Court has no jurisdiction in admiralty over proceedings in personam for collection of the penalty prescribed by Harter Act, § 5 (Comp. St. 1916, § 8033), for refusal to give a clean bill of lading, etc., although, under Judicial Code, § 24, subd. 9 (Comp. St. 1916, § 991[9]), a qui tam action would lie to collect the penalty.

2. SHIPPING ⬅155—ACTION FOR PENALTY—JURISDICTION.
   As the federal District Court has jurisdiction of a qui tam action to collect the penalty prescribed by Harter Act, § 5 (Comp. St. 1916, § 8033), for refusal to issue a clear bill of lading, etc., held that, where respondent answered a libel in personam to collect the same, the proceeding may be treated as the analogue of a complaint qui tam at common law, and need not be dismissed for want of jurisdiction.

3. ADMIRALTY ⬅80—JURY TRIAL—WAIVER.
   Where respondent answered a libel in personam to recover a penalty prescribed by Harter Act, § 5 (Comp. St. 1916, § 8033), etc., thus conceding the admiralty jurisdiction of the District Court, such concession was a waiver of any right to jury trial.

4. SHIPPING ⬅118—DELAY—LIENS.
   Only that vessel which was delayed on account of the shipper's failure to deliver goods for shipment within the time limited can assert a lien,

and the lien cannot be asserted in favor of other vessels of the same owner, which carried a portion of the shipment not loaded on the first vessel.

5. ADMIRALTY ⊙⟳118—APPEAL—AWARD.

Where both parties to a proceeding to collect a penalty prescribed by Harter Act, § 5 (Comp. St. 1916, § 8033), consented to treat it as one in admiralty, though, as the libel was in personam, it was not within the admiralty jurisdiction of the court, the award of the District Court should on appeal be treated as an admiralty award, and not as a finding of a jury.

6. SHIPPING ⊙⟳155—PENALTIES—AMOUNT.

An award of the maximum penalty of $2,000 for violation of Harter Act, § 5 (Comp. St. 1916, § 8033), for refusal to issue clear bill of lading, etc., *held* excessive, it appearing under the circumstances that respondent acted in good faith, and such award should be reduced to $1,000.

Appeals from the District Court of the United States for the Southern District of New York.

Libels by the United States of America, on the relation of the Pressprich & Son Company, against James W. Elwell & Co. and another. From decrees for libelant, respondents appeal. Modified, and, as modified, affirmed.

Appeals from two decrees in admiralty entered on the 28th day of August, 1917, each adjudging the respondents liable in the sum of $2,000 and costs as a penalty for violation of section 5 of the Harter Act. The causes came up upon motions by the relator for the direction of decrees in its favor upon two libels in personam and answers thereto. These libels are precisely the same, except that they concerned different ships. The gist of them was that the relator had delivered to the respondents merchandise which they accepted on board their two steamers, the Venezelos and d'Jibouti; that when on board the relator demanded a clean bill of lading of the respondents, which they had refused to give, in violation of section 5 of the Harter Act. Act Feb. 13, 1893, c. 105, 27 Statutes at Large, 445 (Comp. St. 1916, §§ 8029–8035). The answers in each case alleged as an excuse for the refusal to give a clean bill of lading that the relator had agreed to deliver to the respondents at their pier at Thirty-First street, Brooklyn, 1,500 tons of granulated sugar alongside, and that, in accordance with the known custom prevailing in the port of New York, permits were duly issued by the respondent to the relator, requiring the delivery of the sugar on or before August 4, 1915, alongside the steamer Harpagus, then under charter to the respondents; that on the 2d day of August the respondents informed the relater of the arrival of the steamer Harpagus and of her readiness to receive the cargo, and that August 4, 1915, was the latest date on which the delivery of said sugar could be made without causing undue delay to the steamer; that in disregard of its agreement the relator failed to deliver the sugar until the 12th day of August, and then delivered only 12,800 bags, leaving undelivered 20,800 bags, which arrived later "alongside said steamer," but at a time when the Harpagus had already filled her space; that the 20,800 bags so delivered were later laden on the steamers Venezelos and d'Jibouti, and that the respondents having taken them on board refused to give a clean bill of lading without either payment to them of the damages for the detention of the Harpagus, or with an annotation upon the bills of lading of a lien for such damages.

Butler, Wyckoff & Campbell, of New York City (Homer L. Loomis, of New York City, of counsel), for appellants.

Everett, Clarke & Benedict, of New York City (A. Leo Everitt, of New York City, of counsel), for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] We think that the District Court had no jurisdiction in admiralty over the collection of a penalty by proceedings in personam. Virginia, etc., Co. v. U. S., Taney, 418, Fed. Cas. No. 16,973; McAfee v. The Creole, Fed. Cas. No. 8,655; United States v. The Queen, 4 Ben. 237, Fed. Cas. No. 16,107. The Scotia (D. C.) 39 Fed. 429, was a slightly different case, but indicates the same rule. In The Strathairly, 124 U. S. 558, 580, 8 Sup. Ct. 609, 31 L. Ed. 580, while the point was not raised, the decision, so far as it concerned Revised Statutes, § 4255, leaves practically no doubt upon the question. Judge Love in United States v. Burlington & Henderson County Ferry (D. C.) 21 Fed. 331, ruled the contrary; but the decision stands quite alone. Nevertheless, we have no doubt that the fine might be collected by a qui tam action in the District Court (Judicial Code [Act March 3, 1911, c. 231] § 24, subd. 9, 36 Stat. 1092 [Comp. St. 1916, § 991 (9)]; United States v. Atlantic Fruit Co., 206 Fed. 440, 124 C. C. A. 322) and that the jurisdiction of the District Court over the subject-matter was, therefore complete. It is quite true that an indictment will also lie under the Harter Act (United States v. Cobb, 163 Fed. 791), but our decision in United States v. Atlantic Fruit Co., supra, is to be taken as holding that the United States has the option in such cases of suing in what would have been in earlier times an action of debt, despite the unliquidated character of the recovery. We see no reason to make a distinction between an action by the United States to collect the fine and an action qui tam like that at bar.

[2] If it were the law that under no circumstances could a libel in admiralty be amended into a complaint qui tam at common law, we would have no alternative but to dismiss the proceedings, but the rule we think is not so narrow. In The Sarah, 8 Wheat. 391, 5 L. Ed. 644, a libel in admiralty in rem had been filed for a forfeiture. The court held that, as the goods were seized on hand, the District Court as a court of admiralty had no jurisdiction; but it did not dismiss the cause for that reason, but remanded with instructions to amend the pleadings and proceed as upon a libel of information in rem at common-law. In the Confiscation Cases, 20 Wall. 92, 22 L. Ed. 320, the court treated the pleadings in a libel in rem in the admiralty as equivalent in all essential features to a libel of information in rem at common law, and affirmed the decree; there being no issues triable by jury. We see no reason why a libel in personam may not by analogy be treated as the analogue of a complaint qui tam at common law, and why it is necessary, therefore, to dismiss the cause for want of jurisdiction.

[3] It may be true that at common law in such a case the defendant may have the right to have the fine or penalty assessed by a jury. United States v. Allen, Fed. Cas. No. 14,431; People v. Hartford Life Ins. Co., 252 Ill. 398, 406, 96 N. E. 1049, 37 L. R. A. (N. S.) 778; Commonwealth v. Stevens, 15 Mass. 195; Hines v. Darling, 99 Mich. 47, 57 N. W. 1081; McDaniel v. Gate City Gaslight Co., 79 Ga. 58,

3 S. E. 693. We do not find it necessary to decide that question, because such a right, if it existed, was waived in the answer by the concession of the admiralty jurisdiction of the District Court. Such a concession would not, of course, confer substantial jurisdiction upon the District Court; but where that jurisdiction existed in any event, and where, as we have seen, the cause may be disposed of as at common law, the admission of jurisdiction is not the sole source of the court's power and is an effective waiver of the right to an assessment by a jury. The other differences are those merely of form, which are covered by the decision in the Confiscation Cases, supra.

[4] We may therefore proceed to a decision of the cause upon the merits. The question is whether, assuming that the Harpagus would have had a lien upon the cargo for damages due to the detention of the ship in violation of the contract of carriage, that lien exists in favor of the Venezelos and the d'Jibouti. We observe in passing that the Harpagus's lien in any event depended upon the shipment of the cargo, and that the allegation that the sugar "arrived alongside said steamer" hardly answers the requirement of Bulkley v. Naumkeag Steam Cotton Co., 24 How. 386, 16 L. Ed. 599. That might, however, justify allowing the respondent to plead over, if we thought by any possibility the lien could survive.

There is, however, no allegation of any attempt to preserve the lien so created, if any was created, and the answer presents the bare question whether two other vessels might assert a lien which the first had relinquished. We have very recently considered the question of such a lien in The Saturnus, 250 Fed. 407, —— C. C. A. ——, and there held that, with the single exception of the lien on cargo for detention at the port of lading, the lien is confined to breaches occurring after the cargo comes aboard. This was, it is true, a lien for detention at the port of lading, but in favor of the Harpagus. There is no shadow of authority for asserting that the lien obtains in favor of other vessels owned by the same person. The lien depends upon the possession of the cargo by the vessel, which must as well be the injured party as the possessor. We have no question but that the vessel is so far personified, and that the loss of the Harpagus's possession was a final relinquishment of the lien.

[5, 6] As the cause was treated as though it could be in admiralty, the fine was assessed by the District Judge, and the question is whether we should regard it as we should the verdict of a jury, or as an admiralty award, whose review would be within our jurisdiction. The consent of both sides so to treat it involved, we think, as a consequence, that the award was as though properly made in a proceeding in admiralty. The cause was disposed of without any hearing in which the relevant facts might have appeared, and we have therefore nothing on which to go, except the pleadings themselves. We see nothing upon the pleadings justifying the conclusion of the District Judge that the respondent's refusal was in bad faith or the imposition of the maximum fine. In our judgment a fine of $1,000 in each case is all that the facts warranted. It must be remembered that the libelant's action for damages still remains.

The decree will be modified, by reducing the fines to $1,000 in each case, and, as so modified, will be affirmed with costs in this case to the appellant.