**O'NEILL v. CUNARD WHITE STAR,
Limited.
No. 174, Docket 20477.**

Circuit Court of Appeals, Second Circuit.
March 5, 1947.

Ralph V. Curtis, of Brooklyn, and Silas B. Axtell, of New York City, for appellant.

William J. Brennan and Lord, Day & Lord, all of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from an order of the District Court, refusing to transfer her action from the law to the admiralty side of the court, to be prosecuted as a libel in personam. The plaintiff, a British subject, filed a complaint as administratrix of Richard O'Neill, her husband (also a British subject) against the Cunard Line, a British corporation having a place of business in the Borough of Manhattan. She sued to recover damages resulting from the intestate's death, while serving as an able seaman upon a ship belonging to the defendant. O'Neill had "signed on" in London for a voyage to Canada and return; and he was washed overboard on the high seas as the result, the plaintiff alleged, of the unseaworthiness of the ship and of the negligence of the defendant's servants. He had come to this country in 1924, had declared his intention of becoming a citizen in 1925, and had resided here ever since, but had never been naturalized. The plaintiff came here at some time before March, 1932, at which time she declared her intention of becoming a citizen, but she also had never been naturalized. The couple had four children, all born in this country, all of whom resided with their parents in Brooklyn. The defendant moved to dismiss the complaint for lack of substantive jurisdiction on the ground that both plaintiff and defendant were aliens, and the court granted the motion, giving leave, however, to the plaintiff to reframe her complaint, which she did, changing it to a libel in personam in the admiralty, based upon the Jones Act [1] and upon "the Federal Statute, which governs actions for wrong-

---

[1] Title 46, U.S.C.A. § 688.

ful death." Again the court dismissed it, D.C., 69 F.Supp. 943 without prejudice, however, to transferring it to the admiralty side of the court. The plaintiff, this time as a libellant, then moved so to transfer it; but this the court denied, and it is from that order that the plaintiff has appealed.

 In spite of its apparently interlocutory form, the order is appealable, for it put an end to the suit. Although the district court did not have substantive jurisdiction over the claim by reason of diverse citizenship, since it is based both upon the Jones Act[2] and the "Wrongful Death Act,"[3] it "arises" under the "laws of the United States."[4] We held long ago that any ground of substantive jurisdiction will serve to support an action, regardless of the formal amendments which may be necessary to make it triable on one side or the other of the Court;[5] and our decision in Cunard SS. Co. v. Smith[6] is not to the contrary. The plaintiff there at bar, a stevedore, had no right of action under the Jones Act as it then stood;[7] so that there was nothing for us to do but dismiss the complaint, as soon as it appeared that the necessary diversity did not exist. However, although the court of admiralty has jurisdiction over a suit between aliens, it is not obliged to exercise it:[8] and the first question in the case at bar is whether this is a case in which it would be an abuse of discretion not to do so. We think that it would. The recovery will be for the benefit of the widow and children,[9] and the children are citizens. Moreover, the widow herself, though not a citizen, is domiciled here, and if she cannot sue in this country, she and they are for all practical purposes deprived of their claim. Although the defendant's ship and its witnesses are presumably not in the United States, it has for many years conducted a large shipping business from New York—as everyone knows—and the inconvenience imposed upon it in trying the issues here, does not outweigh the plaintiff's loss of any right to test her cause of action. Thus the question arises whether the claim is good on the merits, which means whether, if O'Neill had been rescued, he could himself have sued for any injuries he might have suffered.[10]

So far as the suit is brought under the Jones Act the question is whether an alien seaman, domiciled for twenty years in the United States, who has applied for citizenship and reared a family here, may sue an alien corporation for injuries occurring on the high seas, during a voyage between foreign ports in one of which he signed the articles. We have passed upon the applicability of the Act three times in somewhat similar situations: The Paula,[11] Gambera v. Bergoty,[12] and Kyriakos v. Goulandris.[13] In the first a German seaman was denied recovery, though injured within our waters, because he had "signed on" in Germany on a German ship for a voyage beginning and ending in Germany. In the second an Italian seaman, long domiciled in the United States, who had taken out "first papers," and had "signed on" for a voyage beginning and ending in the United States, was allowed to recover for injuries within our waters on a Greek ship: such a seaman was considered as having the status of a citizen. In the third a Greek seaman who had "signed on" for a voyage beginning and ending in the United States and was injured within our waters, was allowed to recover from a Greek ship. We may at once rule out as irrelevant Gerradin v. United Fruit Co.,[14] because both the libellant and the respondent were American citizens; and the defendant was not

---

[2] Title 46 U.S.C.A. § 688.

[3] Title 46 U.S.C.A. §§ 761. 764.

[4] Title 28 U.S.C.A. § 41(1) First, (2).

[5] United States ex rel. Pressprich v. Elwell, 2 Cir., 250 F. 939.

[6] 2 Cir., 255 F. 846.

[7] § 20, 38 St.L. 1185, 46 U.S.C.A. § 688; Chelentis v. Luckenbach SS. Co., 247 U. S. 372, 38 S.Ct. 501, 62 L.Ed. 1171.

[8] Canada Malting Co. v. Paterson Co., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837.

[9] Title 45 U.S.C.A. § 51.

[10] Michigan Central R. v. Vreeland, 227 U.S. 59, 70, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas.1914C, 176; Frese v. Chicago, Burlington & Quincy R. Co., 263 U.S. 1, 44 S.Ct. 1, 68 L.Ed. 131; Davis, Agent v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212; Mellon, Director General v. Goodyear, 277 U.S. 335, 48 S.Ct. 541, 72 L.Ed. 906.

[11] 2 Cir., 91 F.2d 1001.

[12] 2 Cir., 132 F.2d 414.

[13] 2 Cir., 151 F.2d 132.

[14] 2 Cir., 60 F.2d 927.

448

therefore allowed the shelter of a foreign flag.

■ The wrong may be regarded as sounding either in tort or in contract; and in either aspect it would of course depend upon English law except as the Jones Act by fiat of Congress interposed to change the result. As a tort, the liability would be determined by the law of the flag, that being the pattern upon which rights and duties are declared for acts done upon the high seas.[15] As a breach of contract, the liability might be thought to depend either upon the law of the place where the contract was made, or where the performance failed; the first place was England, the second was a British ship. The law of England would be applied on either hypothesis. The three decisions we have mentioned do not help us to decide whether we should now hold that the Jones Act interposes to change what would otherwise be the rights and duties of the parties, because in all three the act or omission was within our waters. In each the question was whether an act of Congress, at least literally applicable to the situation, should yield to the doctrine that so far as concerns the "internal economy" of a foreign ship, the law of the flag applies while she is in a foreign port. In my dissent in Kyrakos v. Goulandris, supra.[16] I collected a number of decisions which I need not repeat now, which held that the law of the flag would ordinarily prevail. In the case at bar the situation is just reversed: we are to say, not when the Jones Act should give place to the law of the flag, but when the law of the flag should give place to the Jones Act in places where the Jones Act does not expressly apply. It is true that a state may impose duties upon its own nationals while they are abroad;[17] but the plaintiff must prove that Congress meant to impose duties upon the nationals of other states while they were beyond the territorial limits of the United States, a proposition vastly different in its consequences. Perhaps Congress might go even so far as that, granted an occasion pressing enough; but surely there should be the clearest warrant of its purpose to do so, for it is as extreme an exercise of power as one can well imagine: a bit of absolution beyond all ordinary conventions.

■ ■ There is nothing in the books leading us to suppose that the Act should be so construed; rather the contrary. In Uravic v. Jarka Co.,[18] for example, the whole discussion proceeds on the assumption that it is a question of the lex loci delicti; and, as we have just explained, our own decisions are irrelevant. We are thrown back upon the statute itself. Is there sufficient reason for supposing that Congress meant to confer upon American seamen the new rights against all employers no matter where the wrongful act occurs? True, the Act should be liberally construed, intended as it was for the protection of a class which until relatively recent times were subject to great abuses; but to make an American seaman a specially privileged individual in the crew of every foreign ship—enjoying a privilege incidentally which would certainly not be recognized in any foreign court—would be at once the occasion of ill will among those states whose nationals were affected, and in the long run of no value to the seamen themselves. Foreign owners might, or might not, know of the added responsibility they assumed when they "signed on" an American; those who did not, would feel wronged if later they found themselves saddled with responsibilities which they had no real means of anticipating. Those who did know, would, ceteris paribus, not "sign on" American seamen when they could help it; and, although few American seamen (who are used to a much higher wage scale) are likely to serve on foreign ships except on extraordinary occasions like war, so far as they might apply to serve they would find themselves handicapped. The purpose of Congress, so far as we can reconstruct it, seems to us therefore rather to forbid, than to justify, such an interpretation of the words of the Act, which are themselves neutral; and, as we

---

[15] Restatement of Conflict of Laws, § 406.

[16] 2 Cir., 151 F.2d 132, 139.

[17] Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375.

[18] 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312.

have tried to show, all analogies are in accord. We hold that so far as the libel invoked the Jones Act, it was bad on the merits, and the order was right.

Order affirmed.