Evelyn McAFOOS and William Neff,
Plaintiffs-Appellants,

v.

The CANADIAN PACIFIC STEAM-
SHIPS, Ltd., and The Canadian Pacific
Railway Co., Defendants-Appellees.

No. 116, Docket 24278.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1957.

Decided April 2, 1957.

Richard Gyory, of Cooper, Ostrin & De
Varco, New York City (Sidney Roffman,
New York City, on the brief), for plain-
tiffs-appellants.

Ernest S. Ballard, Jr., of Bleakley,
Platt, Gilchrist & Walker, New York
City (Dennis P. Donovan, New York
City, on the brief), for defendants-ap-
pellees.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

This is an appeal from a decision, D.C. S.D.N.Y., 143 F.Supp. 73, dismissing an action under the Jones Act, 46 U.S.C. § 688, on the ground that there was already pending an earlier instituted libel in admiralty for the same recovery. On this appeal the parties also have presented the issue as one of "election" between a civil action "at law" and a suit in admiralty, although this conceals the more fundamental question of the manner and time in which jury trial is waived.

Plaintiff McAfoos, who was employed as a magician's assistant aboard the vessel "Empress of Scotland," allegedly suffered personal injuries when she fell through an opening in the hold of the vessel while it lay berthed in the Port of New York. She claimed[1] that the boards which normally furnished the deck of the hold had been removed by crew members and not replaced. Thus liability might be predicated on either unseaworthiness or the negligence of the crew members. Although Miss McAfoos enjoyed the social status of a ship's officer, she never signed the ship's articles, was reported to have been listed by the ship as a passenger, and was paid by her employer, co-plaintiff Neff, rather than by the shipowner. On trial she might be proved to be a seaman, a passenger, or a business invitee.

Her ambiguous legal status and the nature of the accident posed a procedural dilemma for the plaintiff at the threshold of the suit. If it should be held later that she was not a "seaman" she could not avail herself of the Jones Act, e.g., Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205; nor could she recover maintenance and cure, Calvino v. Farley, D.C.S.D.N.Y., 23 F.Supp. 654. Perhaps, although not a

seaman, she could nevertheless hold the shipowners liable for the negligence of the crew or the unseaworthiness of the vessel, i.e., Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; but no diversity of citizenship was alleged here, and without such an allegation it is not clear whether or not these theories can be pursued in a federal court. See Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 234 F.2d 253, 257. But in a state court she could not proceed *in rem* against the vessel, e.g., The Glide, 167 U.S. 606, 17 S.Ct. 930, 42 L.Ed. 296. If she decided to sue in a federal court, she still would have the choice of a civil action, a suit in admiralty, or both. In admiralty both *in rem* and *in personam* claims could be pursued in the same action, The Isonomia, 2 Cir., 285 F. 516, 520; but only in a civil action could she try issues to a jury.

Sensing these doctrinal—or at least semantic—obstacles to easy victory, plaintiff's attorney commenced suit by filing a libel in the federal district court against the vessel and the shipowners, alleging negligence, unseaworthiness, and a claim for maintenance and cure, and describing Miss McAfoos as alternatively a crew member or a business invitee. The Jones Act, although not mentioned by name in the libel, was pleaded, since recovery in admiralty was sought for the negligence of crew members and such recovery would have been impossible without the statute. Engel v. Davenport, 271 U.S. 33, 36, 46 S.Ct. 410, 70 L.Ed. 813; Hammond Lumber Co. v. Sandin, 9 Cir., 17 F.2d 760, 762, certiorari denied 274 U.S. 756, 47 S.Ct. 767, 71 L.Ed. 1336. A month later plaintiff's lawyer filed a civil complaint against the shipowners in the same district court, alleging the same facts and theories; this time the Jones Act was mentioned by name and jury trial was asked on all issues.

---

[1]. More fully disclosed by the affidavits submitted by appellants in the district court on application for reargument, and necessarily before us as "original

papers" under our Rule 11(b) and F.R. C.P., rule 75(o). We do not know of any basis for appellees' objection to appellate consideration of these documents.

Before the defendants filed an answer Judge Levet granted their motion, dismissing the complaint as unduly vexatious and because plaintiff by filing a libel had already irrevocably elected to sue in admiralty instead of at law. D.C.S.D. N.Y., 143 F.Supp. 73. Thus plaintiff was left to proceed solely in admiralty, that is, without jury trial.

██ Inasmuch as the libel and complaint pending simultaneously in the same court were substantially identical, there was no serious apprehension that the plaintiff sought two trials or two recoveries. In fact plaintiff offered to consolidate the actions for trial, making it clear that the second suit was only a procedural device to preserve jury trial. Perhaps confusion would have been avoided or lessened had plaintiff not filed a complaint, but instead moved to transfer the *in personam* claims to the civil side of the court for trial to a jury. The *in rem* claims and any *in personam* theories not cognizable at law would not be lost by such a transfer, of course, but would be preserved in admiralty; and both sets of claims could be pressed simultaneously at the trial.

Actually the complaint, filed with the court and served on the defendants, gave all concerned adequate notice that plaintiff was seeking jury trial on all possible issues; and it should make no difference under either the Admiralty Rules or the Federal Rules of Civil Procedure whether at that initial stage of pleading plaintiff demanded jury trial by motion to transfer or by what was technically a second action. Hence our inquiry must be whether plaintiff could have preserved jury trial by such a motion at this stage of the action. A long line of decisions has established the propriety of treating cases begun by libels as actions "at law"—or presently "civil actions"—where there is federal jurisdiction to sustain the suit on the civil side, e.g., In re Confiscation Cases,

87 U.S. 92, 20 Wall. 92, 109–110, 22 L.Ed. 320; United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 2 Cir., 250 F. 939, certiorari denied 248 U.S. 564, 39 S.Ct. 8, 63 L.Ed. 423; Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010; Prince Line v. American Paper Exports, Inc., 2 Cir., 55 F.2d 1053; Troupe v. Chicago, Duluth & Georgian Bay Transit Co., supra, 2 Cir., 234 F.2d 253, 257 note 5. And we have similarly treated an action begun by a civil complaint as a suit in admiralty. O'Neill v. Cunard White Star, 2 Cir., 160 F.2d 446, certiorari denied 332 U.S. 773, 68 S.Ct. 56, 92 L.Ed. 358. This power to shift a case from one "side" of the court to another is not limited to situations where one side has jurisdiction and the other has not, Civil v. Waterman S.S. Corp., 2 Cir., 217 F.2d 94; nor does the district court have unlimited discretion to deny transfer between sides, O'Neill v. Cunard White Star, supra, 2 Cir., 160 F.2d 446.

██ Appellees' principal contention is that suits under the Jones Act are not transferable like ordinary suits, because the statute requires an "election" between law and admiralty and this election is made when the plaintiff files his first pleading.[2] Two other district court judges and the judge below have read our opinion in Balado v. Lykes Bros. S.S. Co., 2 Cir., 179 F.2d 943, 945, as approving this construction of the statute. See Jonassen v. Norwegian Am. Line, D.C.S.D.N.Y., 105 F.Supp. 510; Murphy v. American Barge Line Co., D.C.W.D.Pa., 93 F.Supp. 653. But in the Balado case we held only that the election contemplated by the statute was between a suit in admiralty and a trial by jury and not, as there contended, between theories of negligence and theories of unseaworthiness. We did not mean to express an opinion as to the precise moment at which the election must be finally made, and the statute is equally silent on the point.

2. The actual wording of the Jones Act, 46 U.S.C. § 688, is: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury  *  *  *."

In O'Neill v. Cunard White Star, supra, 2 Cir., 160 F.2d 446, and Civil v. Waterman S.S. Corp., supra, 2 Cir., 217 F.2d 94, we approved the transfer of Jones Act suits from law to admiralty —a result incompatible with the notion that the choice of side of the court is made irrevocably at the first pleading; at least one district court has allowed the identical type of transfer involved here, from admiralty to law. Nilsson v. American Oil Co., D.C.S.D.Tex., 118 F.Supp. 482.

The "election" contemplated by the Jones Act is primarily a decision as to the form of trial—whether jury or non-jury. Balado v. Lykes Bros. S.S. Co., supra, 2 Cir., 179 F.2d 943, 945. Ordinarily in cases transferred from admiralty to law this choice is governed by F.R.C.P., rule 38, treating jury trial as waived unless claimed within ten days after issue is joined. James Richardson & Sons v. Conners Marine Co., 2 Cir., 141 F.2d 226, 230; United States v. The John R. Williams, 2 Cir., 144 F.2d 451, 454, certiorari denied Great Lakes Dredge & Dock Co. v. United States, 323 U.S. 782, 65 S.Ct. 271, 89 L.Ed. 625. Even before the adoption of the Federal Rules the choice between jury trial and trial to the court in transferred cases was not deemed irrevocable until issue was joined. U.S. ex rel. Pressprich & Son Co. v. James W. Elwell & Co., supra, 2 Cir., 250 F. 939; Prince Line v. American Paper Exports, Inc., supra, 2 Cir., 55 F.2d 1053, 1057.

Experience has demonstrated the felicity of the ordinary federal procedure which requires a prompt claim of jury trial or at least shortly after issue is joined to preserve that more cumbersome and calendar-delaying form of trial. See Clark, Code Pleading 113–122 (2d Ed. 1947), and Advisory Committee Note to F.R.C.P. 38. But as there pointed out, under the federal practice and a quite usual state procedure jury trial is not waived by failure to make claim earlier and it may well be unfair, as it is unnecessary, to require earlier action. Such is the case here, where the risk of mistake in choosing a wrong legal theory might be costly indeed.

We think that Congress, by its silence as to the time when "election" must be made, intended that the time for seeking jury trial was to be governed by the ordinary rules of procedure. The opposite construction, accepted by the court below, sets an unnecessary snare for the average lawyer, allowing an initial *faux pas* in this difficult procedural situation to deprive his client of jury trial—a procedural advantage which Congress was most desirous to extend to seamen. See Civil v. Waterman S.S. Corp., supra, 2 Cir., 217 F.2d 94, 97. A construction which creates unnecessary procedural niceties, even in those cases where it does not work to the seaman's ultimate harm, at best puts a premium on the services of experts familiar with special pleading increasing both the cost and the delay of litigation under the statute. And potential harm is always lurking.

Appellees direct us to language in some older appellate opinions suggesting that the "election" is made at the time of the complaint. But those cases dealt with a plaintiff's choice between substantive theories and not, as here, with his choice as to the form of trial; and they did not deal with an effort made by the plaintiff after filing his libel, but before the defendant has answered, to alter his original "election," e.g., Engel v. Davenport, supra, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813; Skolar v. Lehigh Valley R. Co., 2 Cir., 60 F.2d 893; Hammond Lumber Co. v. Sandin supra, 9 Cir., 17 F.2d 760.

Other cases cited by appellees deal with the situation where one suit has proceeded to judgment before the second action is dismissed. Those cases rest on the theory of *res judicata,* but are inapposite here, since neither present action has reached judgment, e.g., Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Jonassen v. Norwegian Am. Line, supra, D.C.S. D.N.Y., 105 F.Supp. 510.

Kuhlman v. W. & A. Fletcher Co., 3 Cir., 20 F.2d 465, appears to support the appellees' contention for an early election, although the election there found was between a claim of negligence and a claim of unseaworthiness. How far that part of the opinion is law in that circuit today may be considered doubtful. Compare McCarthy v. American Eastern Corp., 3 Cir., 175 F.2d 724, certiorari denied American Eastern Corp. v. McCarthy, 338 U.S. 868, 70 S.Ct. 144, 94 L.Ed. 532. In any event we have quite clearly held otherwise. O'Neill v. Cunard White Star, supra, 2 Cir., 160 F.2d 446; Civil v. Waterman S.S. Corp., supra, 2 Cir., 217 F.2d 94.

We conclude that until ten days after issue is joined a libelant can transfer part of his suit to the civil side of the district court for jury trial, although it contains a claim under the Jones Act. Consequently the Jones Act does not require dismissal of the plaintiff's complaint on an "election" rationale. Nor was the complaint unduly vexing to the defendants, who could have moved at any time to consolidate it with the pending libel. Had the two suits been in different courts, dismissal might have been appropriate on such grounds; but even then the trial judge might prefer to transfer one suit under 28 U.S.C. § 1404 to the district where the other is pending for consolidation with it.

Our disposition of the case reopens the question of which issues are triable to the jury, which the district court had so abruptly resolved. The Jones Act claim is of course cognizable at law; but there is more difficulty with the counts alleging unseaworthiness, maintenance and cure, and recovery in some capacity other than that of a seaman. Plaintiff has indicated that she will amend her complaint to allege diversity of citizenship, so that we need not here decide whether or not in the absence of such allegations the district court could hear such claims at law on the theory that they were ancillary or pendant to the civil action under the Jones Act and part of the same cause of action. See

Troupe v. Chicago, Duluth & Georgian Bay Transit Co., supra, 2 Cir., 234 F.2d 253, 258; Doucette v. Vincent, 1 Cir., 194 F.2d 834, 840 note 5. We point out only the obvious convenience of a consolidation of the admiralty and civil actions, so that the *in personam* claims may be tried to a jury at the same time that the *in rem* claims are tried to the court. Of course the final rationale for a judgment is for the court, so that there need never be an "election" between legal theories. See Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974, 976. The court, in arriving at its ultimate judgment, will make the choice, dictated naturally only by the principles of substantive law which govern the relief sought.

Miss McAfoos' employer, William Neff, joined in the libel and complaint seeking recovery of business losses allegedly caused by Miss McAfoos' injury. What has been said of Miss McAfoos' claim applies equally to the derivative claim of her employer.

Reversed and remanded.