Jenny FERNANDEZ and Herman Varela, as Administrators of the Estate of Elvia B. Varela, Deceased, Libelants,

v.

LINEA AEROPOSTAL VENEZOLANA, Respondent.

United States District Court
S. D. New York.

Oct. 21, 1957.

The action was started by a libel in admiralty. It was brought by the administrators of the estate of Elvia B. Varela who is alleged to have been a stewardess on board an aircraft owned and operated by the respondents which crashed into the Atlantic Ocean more than one league from the shore line of the United States on June 20, 1956. It is alleged that the crash caused the death of the stewardess and that the occurrence was brought about by the negligent operation of respondent's aircraft.

Five causes of action are alleged. Respondents contend that none of the causes of action states a claim upon which relief can be granted.

The first cause of action alleges that a cause of action has been afforded to libelants by the Death on the High Seas Act, 46 U.S.C.A. §§ 761–767.

Respondents deny that this act affords a cause of action under the circumstances set forth in the libel. The Court of Appeals for the Second Circuit has expressly reserved ruling on the question of whether this act grants a right of action for death in the airspace. See Noel v. Linea Aeropostal Venezolana, 2 Cir., 247 F.2d 677. However, the act has been deemed applicable to airplane crashes in a number of cases where the crash occurred over the ocean. Wilson v. Transocean Airlines, D.C.N.D.Cal.1954, 121 F. Supp. 85; Higa v. Transocean Airlines, D.C.Hawaii 1954, 124 F.Supp. 13; Choy v. Pan-American Airways Co., 1941 A.M. C. 483 (S.D.N.Y.1941). See also, 55 Colum.L.Rev. 907, n. 56; 41 Cornell L. Rev. 243 at p. 245 (1956).

Herbst & Herbst, New York City, for libelants, Jerome Golenbock, New York City, of counsel.

Brinsmade & Schafrann, New York City, for respondent, Hobart L. Brinsmade, New York City, of counsel.

DAWSON, District Judge.

Two motions have been presented to the Court. The first one brings up exceptions by the respondents to the five alleged causes of action contained in the libel, on the ground that the libel fails to state causes of action either in admiralty or at law. The second motion seeks to transfer the second, third, fourth and fifth causes of action from the admiralty to the civil docket.

Respondents do not seek to dismiss the first cause of action on the general ground that the Death on the High Seas Act is not applicable to death resulting from an airplane crash. Rather they contend that the only part of the act applicable is § 4 of the act, 46 U.S.C.A. § 764,[1] which makes recovery con-

---

1. "§ 764. Rights of action given by laws of foreign countries
  "Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect,

or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abate-

tingent upon the right of action granted by the law of the foreign state. Respondents contend that § 1 of the act, 46 U.S.C.A. § 761,[2] does not create a cause of action when death occurs on board a foreign flag ship or plane outside of the territorial waters of the United States, on the ground that under the circumstances only the law of the flag applies. They urge that the only remedy available to a representative of the person whose death occurred on board a foreign ship or plane outside of the territorial waters of the United States is that accorded by the foreign law, and that although an action may be brought in admiralty in this Court, pursuant to § 764 of Title 46, no independent cause of action (not growing out of the rights granted by the foreign law) may be maintained in this Court. This position would mean that no action would lie for wrongful death on the high seas unless death occurred on a plane or vessel which flew the flag of a nation which had by statute granted a cause of action for wrongful death. This would be a harsh rule and would hardly seem consonant with the intent of Congress in adopting the Death on the High Seas Act. If Congress had intended that only the law of the flag was applicable to actions for death on the high seas, then § 4 of the act would be sufficient to preserve such cause of action. But the act as passed preserved not merely rights under foreign law, but also, by § 1 of the act, gave an additional right to the personal representative of the deceased to maintain an action against the "vessel, person, or corporation which would have been liable if death had not ensued." As the court said in Wilson v. Transocean Airlines, supra, 121 F.Supp. at page 94: "By these words the statute gives a right of action where none existed before."

Whether Congress had the power to create such a cause of action, or intended to create such a cause of action, where death occurred on a foreign ship or plane on the high seas, has been the subject of much discussion.[3] It is urged that in Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254, a case dealing with the application of the Jones Act, 46 U.S.C.A. § 688 to foreign seamen on foreign ships, the Supreme Court held that in the absence of a clear showing of different Congressional intent, such maritime statutes would be considered to apply only to areas and transactions in which American law would be considered operative under prevalent doctrines of international law. However, the Jones Act was, in practical effect, a labor law regulating the rights of seamen; and in the absence of definite legislative intent to the contrary, it would be proper to assume that it was not intended to regulate the rights of foreign seamen on foreign ships. See O'Neill v. Cunard White Star Lines, 2 Cir., 1947, 160 F.2d 446, certiorari denied 332 U.S. 773, 68 S.Ct. 56, 92 L.Ed. 358.

█ But when we are dealing with death acts, such as Lord Campbell's Act, 9 & 10 Vict., c. 93, or the Death on the High Seas Act, we are dealing with a different situation. The courts have held that in the absence of a statute an action could not be maintained for death

---

ment in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding. Mar. 30, 1920, c. 111, § 4, 41 Stat. 537."

2. "§ 761. Right of action; where and by whom brought
   "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued. Mar. 30, 1920, c. 111, § 1, 41 Stat. 537."

3. See Magruder & Grout, Wrongful Death Within the Admiralty Jurisdiction, 35 Yale L.J. 395 (1926); Robinson, Wrongful Death in Admiralty and the Conflict of Laws, 36 Colum.L.Rev. 406 (1936); Comment, 41 Cornell L.Q. 243 (1956).

caused by negligence. See The Harrisburgh, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. These cases did not develop from the principle that no right existed, or that no wrong had been done, but rather that whatever cause of action had existed had died with the death of the person injured and could no longer be asserted even by the next of kin or the estate of the deceased victim. To correct this situation death acts have been passed in nearly all jurisdictions. This still left a vacuum in the case of deaths which might result from accidents on the high seas. To allow actions to be maintained for deaths in this situation the Death on the High Seas Act was enacted. See Hughes, Death Actions in Admiralty, 36 Yale L.J. 115 (1921). While the maintaining of a death action is sometimes loosely referred to as a "substantive right," it is, properly speaking, not a "right" but rather a "power" which removes a previous "disability." See Fundamental Legal Conceptions as Applied in Judicial Reason, by Professor Hohfeld, 26 Yale L.J. 710 (1917). The "right" depends on whether a wrong has been committed and this, of course, depends upon where the act was committed. An act in one area may be a wrong, but in another area may not be a wrong. The Death on the High Seas Act recognizes this distinction for it does not create a cause of action or grant a right of recovery for death in every situation but only against those defendants "which would have been liable if death had not ensued." Thus the liability for an accident causing death would be dependent upon the law of the place where the accident happened—and if it happened on a foreign ship it might well be dependent upon the law which would be applicable to that ship. The right of action for negligence would depend upon the law of the place of the accident, but the "power" to maintain the action would not be dependent upon the locus of the accident but rather upon the forum which exercised that power. In this country the admiralty courts have assumed jurisdiction to the extent that the laws of the country extend that jurisdiction. Thus in The Buenos Aires, 2 Cir., 1924, 5 F.2d 425, the Court of Appeals for this Circuit held that under the Death on the High Seas Act a Spanish vessel was liable in an action *in rem* for the death of a seaman, even though there was no right of action *in rem* under the Spanish law.

In The Scotland, 105 U.S. 24, 29, 26 L.Ed. 1001, the Supreme Court said:

"In administering justice between parties it is essential to know by what law or code or system of laws, their mutual rights are to be determined. When they arise in a particular country or State, they are generally to be determined by the laws of that State. Those laws pervade all transactions which take place where they prevail, and give them their color and legal effect. Hence if a collision should occur in British waters, at least between British ships, and the injured party should seek relief in our courts, we would administer justice according to the British law, so far as the rights and liabilities of the parties were concerned, provided it were shown what that law was. If not shown, we would apply our own law to the case. In the French or Dutch tribunals they would do the same. But, if a collision occurs on the high seas, where the law of no particular State has exclusive force, but all are equal, any forum called upon to settle the rights of the parties would, *prima facie,* determine them by its own law as presumptively expressing the rules of justice; but if the contesting vessels belonged to the same foreign nation, the court would assume that they were subject to the law of their Nation carried under their common flag, and would determine the controversy accordingly. If they belonged to different Nations, having different laws, since it would be unjust to apply the laws of either to the exclusion of the other, the law of the forum, that is, the maritime law as received and practiced therein,

would properly furnish the rule of decision. In all other cases, each Nation will also administer justice according to its own laws. And it will do this without respect of persons, to the stranger as well as to the citizen. If it be the legislative will that any particular privilege should be enjoyed by its own citizens alone, express provision will be made to that effect. Some laws, it is true, are necessarily special in their application to domestic ships, such as those relating to the forms of ownership, charter-party, and nationality; others follow the vessel wherever she goes, as the law of the flag, such as those which regulate the mutual relations of master and crew, and the power of the master to bind the ship or her owners. But the great mass of the laws are, or are intended to be, expressive of the rules of justice and right applicable alike to all."

The admiralty law of the United States, as expressed in the Death on the High Seas Act, now grants power to the admiralty courts to entertain an action for a wrong done on the high seas even though the person injured has died as a result of the wrong. This power granted to the courts is applicable even though the wrong occurred in an area not subject to the laws of the United States.

The motion to dismiss the first cause of action is denied.

The second cause of action alleges that a cause of action has been afforded to the libelants under the Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. Part II, p. 3000 et seq. (1934), usually called the "Warsaw Convention." The Court of Appeals for this Circuit has held, in a case growing out of the same airplane accident, that the Warsaw Convention does not provide an independent cause of action. Noel v. Linea Aeropostal Venezolana, 2 Cir., 247 F.2d 677. The second cause of action is therefore dismissed.

The third cause of action alleges:

"That a cause of action has been afforded the libelants herein under the statutes and laws of the foreign state of Venezuela."

Respondents object that this cause of action is insufficient in that this allegation is merely conclusory and insufficient to comply with Rule 22 of the Admiralty Rules, 28 U.S.C.A. which requires a libelant to allege the facts upon which he relies; and that the libel is insufficient since libelants have failed to plead the substance or text of the law of Venezuela upon which they rely.

A libel which had essentially the same allegation as to foreign law was dismissed by Judge Weinfeld with the statement:

"The libellant may not rely upon such a conclusory allegation as to the effect of the foreign law but must set forth its substance. * * *" Iafrate v. Compagnie Generale Transatlantique, D.C.S.D.N.Y.1952, 106 F.Supp. 619, 622.

It is to be noted that Admiralty Rule 22 provides:

"The libel shall also propound and allege in distinct articles the various allegations of fact upon which the libelant relies in support of the suit, so that the respondent or claimant may be able to answer distinctly and separately the several matters contained in each article * * *."

In this respect the Admiralty Rule is quite different from the Civil Rule which does not require the pleading of the *facts* but only the allegation of a *claim*. See Rule 8 of the Rules of Civil Procedure, 28 U.S.C.A.

It has been established for a long time that foreign law is a matter of fact which must be pleaded and proved with definiteness. See Empresa Agricola Chicama Ltda v. Amtorg, D.C.S.D.N.Y. 1944, 57 F.Supp. 649; Lehnertz v. Societe Anonyme, etc., D.C.S.D.N.Y.1948, 8 F.R.D. 319.

The third cause of action is dismissed with leave, however, to the libel-

ants to file an amended pleading within sixty days alleging the text or the substance of the foreign law on which they rely.

The fourth cause of action alleges that the acts of the respondent violated the provisions of the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., and the rules, regulations, orders and directives promulgated by the Civil Aeronautics Board and the Civil Aeronautics Authority, and that these violations were the proximate cause of the death of the decedent. The act, and the rules, regulations, orders and directives promulgated thereunder, might establish a standard of care which will be applicable in a proper action brought to recover damages for wrongful death, but neither the act nor the regulations create an action for wrongful death. An action for wrongful death does not exist at common law and is purely a creature of statute. The Harrisburgh, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. The wrongful death statutes differ widely in their provisions as to jurisdiction, venue, persons who may sue, damages recoverable, time for instituting the action, etc. The Civil Aeronautics Act of 1938 did not create a new and independent action for wrongful death and the cause of action set forth in the libel, to the extent that it exists at all, is not transformed into a separate cause of action by the allegation that the respondent violated the Civil Aeronautics Act of 1938. The fourth cause of action is dismissed.

The fifth cause of action alleges that there was a policy of insurance in favor of the estate of the decedent in the sum of $10,000, no part of which has been paid. It is not alleged that the policy of insurance was issued by the respondent or that respondent is liable on this policy. There are no allegations in the fifth cause of action which set forth the basis of a claim against the respondent. The fifth cause of action is dismissed, subject to leave to submit an amended complaint within a period of sixty days.

In view of the disposition of the first part of the motion, it becomes unnecessary to consider so much of the motion as seeks to transfer the second, third, fourth and fifth causes of action from the admiralty to the civil docket.

The motion to dismiss the first cause of action is denied. The motions to dismiss the second and fourth causes of action are granted. The motions to dismiss the third and fifth causes of action are granted, with leave, however, to file an amended libel within a period of sixty days. So ordered.