**Phyllis A. BERGERON, as Administratrix of the Estates of Nancy M. Guy, Deceased, Kenneth Charles Guy, Deceased and Elaine Barbara Guy, Deceased, Libellant,**

v.

**KONINKLIJKE LUCHTVAART MAATSCHAPPIJ, N.V., also known as K. L. M./Royal Dutch Airlines, Respondent.**

United States District Court
S. D. New York.

Nov. 14, 1960.

Emile Z. Berman and A. Harold Frost, by Marvin V. Ausubel, New York City, for libellant.

Haight, Gardner, Poor & Havens, by Eugene C. Brugger, New York City, for respondent.

IRVING R. KAUFMAN, District Judge.

Libellant's decedents, who were all citizens and residents of the United States, met their death when an airplane owned and operated by the respondent, a Dutch airline, crashed into the Atlantic Ocean while en route from Shannon, Ireland, to New York. Libellant brought this action to recover for their alleged wrongful deaths, asserting three separate causes of action as to each decedent. Her first set of claims is based on Section 1 of the Death on the High Seas Act, 46 U.S.C.A. § 761, which, if applicable, affords a cause of action under American law. This section provides:

"Whenever the death of a person shall be caused by wrongful act, neg-

lect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

A second basis for relief, grounded in Dutch Law, is alleged pursuant to Section 4 of the Death on the High Seas Act, which provides:

"Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized any statute of the United States to the contrary notwithstanding." [1]

Finally, the libellant asserts claims *at law*, based upon the Dutch Wrongful Death Statute. Jurisdiction of these causes of action is premised on diversity of citizenship, and a jury trial is demanded.

Respondent has moved here to dismiss the claims based on Section 1 of the Death on the High Seas Act, and the common-law claims grounded in Dutch law, contending that an action under Section 4 of the Act is the exclusive remedy when the death sought to be redressed occurs on a foreign vessel on the high seas.

The question of the interaction between Section 1 and Section 4 has long been a perplexing one, and has evoked much scholarly comment. See, e.g. Robinson, Handbook of Admiralty Law 139 (1939); 67 Yale L.J. 1445 (1958); 71 Harv.L.Rev. 1152 (1958); 41 Cornell L.Q. 243 (1956). Relatively few cases, however, have dealt with the problem. The early cases took a position which would support respondent's contention that the two sections are mutually exclusive. Thus, in The Vestris, D.C.S.D. N.Y.1931, 53 F.2d 847, the court explicitly held that when the deaths involved took place on a foreign vessel, the claimants did not have the option of suing either under Section 1 or Section 4, but rather were required to bring their action under Section 4. A similar result was reached in The Vulcania. After the District Court sustained a libel brought under Section 1, even though a foreign vessel was involved, since foreign law had not been sufficiently pleaded, D.C. S.D.N.Y.1940, 32 F.Supp. 815, it later dismissed the Section 1 claim when it appeared that the foreign law had been sufficiently pleaded so as to provide the basis for a claim under Section 4. D.C. S.D.N.Y.1941, 41 F.Supp. 849. Thus, at least until 1952, it seemed clear that Section 1 was inapplicable when the death occurred on a foreign vessel, see Robinson, Handbook of Admiralty Law 139 (1939); no case had held otherwise.

In 1952, Judge Weinfeld, in Iafrate v. The Liberte, D.C.S.D.N.Y.1952, 106 F. Supp. 619, sustained a libel under Section 1 although the death occurred upon a French vessel. The problem of the relationship with Section 4 was not extensively discussed, although it is noteworthy that the court dismissed the claim based on French law on the ground that the French law had been insufficiently pleaded. Leave to serve an amended libel, containing proper allega-

---

1. It is clear that the primary purpose of the concluding clause is to render the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 183–189 inapplicable to ac- tions brought under this section against foreign shipowners. See, e. g. The Vestris, D.C.S.D.N.Y.1931, 53 F.2d 847.

tions, was granted. Thus, the problem of a possible multiplicity of remedies was not squarely faced.

In Fernandez v. Linea Aeropostal Venezolana, D.C.S.D.N.Y.1957, 156 F. Supp. 94, the court purported to deal with this problem. The case involved an American citizen who met her death on a Venezuelan plane which crashed on the high seas. The respondent argued that only Venezuelan law, under Section 4, was applicable, and that there could be no cause of action based on American law under Section 1 for a death occurring on a foreign vessel or aircraft. The court rejected this contention, and sustained the libel under Section 1, in language indicating its belief that remedies under the two sections were cumulative. The court said:

> "But the act as passed preserved not merely rights under foreign law, but also, by § 1 of the act, gave an *additional* right to the personal representative of the deceased to maintain an action against the 'vessel, person, or corporation which would have been liable if death had not ensued.'" (Emphasis supplied.) 156 F.Supp. at page 96.

But despite this broad language, which would indicate cumulative causes of action in all situations of American deaths on foreign vessels, the court clearly showed its primary concern over the situation in which the applicable foreign law did not grant a cause of action for wrongful death. Thus, to guard against this possibility, a cause of action under Section 1 was found. In this regard, it is again noteworthy that the court dismissed the cause of action asserted under Venezuelan law, with leave to amend, for failure to sufficiently plead the substance of that law. Therefore, it appeared uncertain whether or not a cause of action under Venezuelan law existed.

The last case to consider the problem was Noel v. Airponents, Inc., D.C.N.J. 1958, 169 F.Supp. 348, 351. The cause of action in that case arose from the same airplane disaster as gave rise to the Fernandez litigation. Here again the court sustained libellant's claim based on Section 1, although the death occurred on a foreign aircraft. But the court emphasized a number of factors which moved it to its conclusion. The libellant, an American citizen, asserted his claim against the agency which serviced the plane, an American corporation, rather than against the foreign carrier. Thus, both parties to the suit were American nationals. Further, the alleged tortious conduct occurred within the United States. In addition, it appeared that no cause of action under Venezuelan law existed, an opinion which was not disputed by the libellant. Thus, since virtually all of the relevant contacts pointed to the application of American law, the cause of action under Section 1 was sustained. The court did not hold that cumulative remedies under Section 1 and Section 4 were available; rather, the whole tenor of the opinion indicated that the court was seeking to find the *one* applicable body of law which could properly govern the entire claim.

In the present case, none of the factors influencing the court to apply American law in Noel are present. The respondent here is the foreign airlines. Furthermore, it appears that the Dutch law does provide a basis for recovery for wrongful death; it has been specifically pleaded by the libellant, and the respondent appears to concede its applicability. Thus, the question of whether, in a case in which foreign law under Section 4 appears to be applicable, there is an additional cause of action under Section 1, is squarely before the court.

■ I am of the opinion that the "choice of law" approach adopted by Judge Smith in the Noel case is the most fruitful means for solving this admittedly perplexing problem. Cf. Lauritzen v. Larsen, 1952, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254. It is certainly anomalous for the representative of a decedent who died on a foreign vessel to have two bases for recovery, while the representative of

a decedent dying on an American vessel is limited to a single cause of action under Section 1. It is most difficult to attribute such an intent to Congress. It seems clear that the primary purpose for the enactment of the Death on the High Seas Act was to assure that there would be *some* recovery for the wrongful death of American citizens dying in disasters on the high seas. See Fernandez v. Linea Aeropostal Venezolana, D.C. S.D.N.Y.1957, 156 F.Supp. 94, 96. Thus, the courts in Iafrate, Fernandez and Noel felt it necessary to apply American law when there appeared to be substantial doubt whether a cause of action under foreign law existed, in order to assure that *some* basis for recovery was present. But, when there is no such doubt, the presence of both Section 1 and Section 4 allows the Act to be applied with flexibility so as to arrive at the one proper choice of law to appropriately govern the litigation. And Section 4 itself, following the traditional and still-valid primacy accorded in admiralty to the "law of the flag", see Lauritzen v. Larsen, 1952, 345 U.S. 571, 584–585, 73 S.Ct. 921, 929, 97 L.Ed. 1254, appears to embody the additional policy that, in making this determination, when the death occurs on a foreign vessel, foreign law is to be applied. There is no reason to depart from this principle when, as in the instant case, the applicable foreign law provides a cause of action for wrongful death, and is sufficiently pleaded. When the foreign law provides no such action, or an examination of the relevant contact points indicate, as in Noel, a closer relation to American law, Section 1 will be available so as not to preclude recovery. But there is no warrant in the statutory language or policy for the maintenance of concurrent causes of action under both American law (Section 1) and foreign law (Section 4). Thus, the libellant's first, fourth and seventh libels, seeking to assert claims under Section 1 of the Death on the High Seas Act, must be dismissed.

Libellant also seeks to assert claims on the civil side, based on Dutch law. The controversy has long raged as to whether suits brought under the Death on the High Seas Act could be maintained at law as well as in admiralty. Both Section 1 and Section 4 contain language suggesting that actions can only be brought in admiralty. Section 1 provides "the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty * * * ". Although earlier cases held that this language was merely permissive, and thus that an action could be brought under Section 1 at law, see, e. g. Choy v. Pan-American Airways Co., D.C.S.D. N.Y., 1941 A.M.C. 483, it now seems to be accepted that the language of the section is mandatory, and thus that jurisdiction is solely in admiralty. See Noel v. Linea Aeropostal Venezolana, 2 Cir., 247 F.2d 677, 66 A.L.R.2d 997, certiorari denied 1957, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262; Higa v. Transocean Airlines, 9 Cir., 230 F.2d 780, certiorari dismissed, 1956, 352 U.S. 802, 77 S.Ct. 20, 1 L.Ed.2d 37; Wilson v. Transocean Airlines, D.C.N.D.Cal.1954, 121 F.Supp. 85. Since there was clearly no cause of action for wrongful death on American vessels prior to the passage of the Act, see The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, there is plainly no basis for the maintenance of a civil action at law independent of the Act. See 41 Cornell L.Q. 241, 250 (1956).

However, libellant argues that Section 4 presents a different situation. This section, unlike Section 1, does not create an entirely new cause of action, but rather provides for the enforcement of rights of action granted by foreign law. But, the section provides, similar to Section 1, that "such right may be maintained in an appropriate action in admiralty in the courts of the United States." Judge Weinfeld, after a review of legislative history, has concluded that this language also is mandatory, and thus that actions

under Section 4 can only be brought in admiralty. Iafrate v. The Liberte, D.C. S.D.N.Y.1952, 106 F.Supp. 619. Libellant seeks to avoid this holding by asserting the claims in her third, sixth and ninth causes of action, not under Section 4, but independently of the statute, with diversity of citizenship as a basis of jurisdiction. Foreign wrongful death statutes were enforced in American courts prior to the passage of the Act, albeit in admiralty rather than at law. See La Bourgogne, 1908, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973. Thus, subsequent to its passage, some courts have sustained actions brought at law for the enforcement of rights granted by foreign wrongful death statutes, Powers v. Cunard S. S. Co., D.C.S.D.N.Y.1925, 32 F.2d 720; The Saturnia, D.C.S.D.N.Y.,1936 A.M.C. 469, presumably based on the "Savings-to-Suitors" clause, 28 U.S.C. § 1333(1). Cf. Egan v. Donaldson Atlantic Line, D.C.S.D.N.Y.1941, 37 F. Supp. 909.[2] Considerations of uniformity and legislative intent would indicate that Section 4, like Section 1 should be exclusive in its sphere. See Iafrate v. The Liberte, supra. Moreover, it is once again difficult to believe that Congress would choose to discriminate between representatives of decedents dying on foreign vessels and those dying on American vessels, by allowing to the former, in addition to the traditional action in admiralty, an action at law with its concomitant right to jury trial, while limiting the latter to an admiralty action.[3] I am of the opinion that in an area such as this, courts should strive to reach a result which will foster uniformity and equality of treatment. Thus, the respondent's motion to dismiss the libellant's third, sixth and ninth causes of action is also granted. Settle order.

2. The decisions in both Powers and the Saturnia were rendered before an examination of legislative history by the courts indicated that actions under Section 1 and Section 4 could be brought only in admiralty. Thus, at the time these decisions were rendered, it was not anomalous to allow the representative of a decedent dying on a foreign vessel to bring a common-law action, since the same right to a jury was presumably available under the statute. But, in light of the subsequent holdings in such cases as Higa and Iafrate, it seems clear that the apparent rationale of Powers and The Saturnia should be re-examined. Moreover, neither of these cases dealt with the situation presented here, in which the libellant attempted to bring claims based on the same statutes both in admiralty and at law.

3. The administrative difficulties in allowing claims based on identical statutes to be brought in the same action both at law, with a jury, and in admiralty, without a jury, is also a factor which should be considered.